FILED

1    Nancy Duffy McCarron, CBN 164780
     Law Office of Nancy Duffy McCarron
2    950 Roble Lane
     Santa Barbara, CA  93103          2012 NOV 29  PM 12: 41
3    805-450-0450   fax 805-965-3492
     nancyduffysb@yahoo.com            CLERK U.S. DISTRICT COURT
4          Real Estate Broker Lic. 853086   CENTRAL DIST. OF CALIF.
                                               RIVERSIDE
5    Attorney for Plaintiff Carole S. Alles

6

7

8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10                         EASTERN DIVISION

11   CAROLE S. ALLES        ED CV 12 - 0 2 0 9 5 SVW (DTBx)

12                          Case No.
                    Plaintiff,
13          v.
     WELLS FARGO BANK, NA;           EX PARTE APPLICATION FOR ORDER
14   WELLS FARGO HOME
     MORTGAGE, INC;                  TO SHOW CAUSE AND TEMPORARY
15   CAL-WESTERN RECONVEYANCE
     CORPORATION;                    RESTRAINING ORDER
16   DOES 1-10

17                   Defendants.

18                      STATEMENT OF FACTS

19      On 7/28/2006 while still employed plaintiff bought a home at 43060 Illinois

20   Ave., Palm Desert, executing a 7% fixed rate note to Wells Fargo Bank, NA

21   for a 30 year term, at $1,491.78 monthly.  Plaintiff's loan was securitized into

22   a pool of Mortgage Backed Securities.  On September 13, 2006 Freddie Mac

23   acquired the loan.   For 6 years plaintiff never missed a payment, having paid

24   $100,000 in interest.  Plaintiff has suffered from an inoperable, incurable

25   lung disease for many years.  By age 70 the disease had progressed to the

26   point that plaintiff was unable to work even part-time to supplement her

27   monthly $857 Social Security stipend.    Symptoms are incessant coughing,

28   rendering it difficult to communicate.    See Doctor's narrative. **Exhibit A**].

                                  - 1 -

1  In 2008 the housing bubble burst. California was the hardest hit state.
2  Palm Desert housing prices and rents dropped to half their market value.
3  Plaintiff always shared her home with two roommates to make payments.
4  The severe recession resulted in a glut of rental units in the desert area.
5  Plaintiff had to lower rents to keep her rooms rented and depleted savings to
6  make mortgage payments when there was insufficient rental income to cover.
7  Interest rates dropped from 7% to 6%, then 5%, then 4% currently 3%.
8  Plaintiff called WFB several times in the past 2 years seeking a modification
9  of her loan down to market rates. WFB agents told plaintiff so long as she
10  continued to make payments the bank would never agree to modify her loan,
11  because the lender only modified loans in default or facing a foreclosure.
12  WFB agents suggested she stop making payments to trigger a modification.
13  By March 2012 monthly payments exceeded plaintiff's income and her
14  savings were depleted. After a few months of missed payments WFB
15  recorded a Notice of Default.  Plaintiff's counsel then summoned NHSIE
16  (Neighborhood Housing Services of the Inland Empire)----the local agency
17  affiliated with the Home Affordable Modification Program [HAMP] for help.
18  Treasury Department created HAMP to stabilize national housing market.
19  On July 31, 2009 WFHM executed a Servicer Participation Agreement
20  with Freddie Mac who acts as the government's program agent. WFHM
21  agreed to apply HAMP criteria to homeowners facing imminent foreclosure.
22  **WFHM received millions in TARP funds as incentives to modify failed loans.**
23  Plaintiff's counsel worked for a few months with NHSIE as intermediary,
24  then directly with a WFHM Home Preservation Specialist (Carman Saldana)
25  to obtain a modification under the HAMP program. Plaintiff qualifies under
26  HAMP guidelines because she has a hardship, is over 65, and disabled.
27  On 11/8/2008 Carman Saldana notified plaintiff in writing that her
28  application for a loan modification under the HARP program was denied.

EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

1    The letter recited that plaintiff "*did not meet the requirements of the*
2    *program*" because: "*Based on your documented income, we are unable to*
3    *create an affordable payment that meets the requirements of the program.*"
4    This was a naked conclusion, unsupported by any evidence showing how or
5    why plaintiff did not qualify under HAMP guidelines or any explanation of
6    the factors purportedly used to deny modification to which she was qualified.
7    Under HAMP guidelines the loan service was required to attach as Exhibit A
8    an explanation of why the borrower did not qualify for HAMP modification,
9    showing the specific factors relied upon as inputted into the NPV online tool.
10   Ms. Saldana wrote that plaintiff could escalate a review by appealing, and
11   "**Your home will not be sold in a foreclosure sale during the appeal period**."
12   A copy of Ms. Saldana's 11/8/12 denial letter is attached as **Exhibit B**.

13       Despite this unequivocal promise, the following Saturday, on 11/17/12 a
14   bank agent posted a *Notice of Sale* of plaintiff's home scheduled for 12/19/12.
15   Plaintiff's counsel submitted a written demand to trustee [CWRC] to cancel
16   the sale date, faxing a copy to Ms. Saldana.   Defendant CWRC did not
17   respond to plaintiff's attorney demand and did not cancel the 12/19/12 sale.

18       On 11/23/12 plaintiff's attorney used HAMP's NPV calculation tool on its
19   website, "Make Homes Affordable" to calculate the loan with actual accuracy.
20   The tool's results show plaintiff is eligible for HAMP program relief [**Exh C**]
21   Despite being eligible, the loan servicer failed to modify policies & procedures
22   to accommodate a disabled elder as required under ADA.  [42 USC §12101]

23       Despite eligibility and a written promise not to sell during her appeal
24   window WFB callously posted a notice the Saturday before Thanksgiving
25   telling plaintiff she would become homeless the weekend before Christmas.
26   Plaintiff has no other adequate remedy and is in danger of immediate harm.
27   An injunction staying the sale of her home on 12/19/12 is her only remedy.
28   There is no other adequate remedy and the pending sale is imminent.

- 3 -

## POINTS & AUTHORITIES

**TRO:**  Under Rule 65(b)(1), a temporary restraining order (TRO) may issue without any notice to the adverse party if: (1) movant states specific facts by affidavit or verified complaint that shows irreparable harm will result if relief were delayed to provide notice; and (2) movant's attorney certifies the efforts made to give notice and reasons why notice should not be required . see *13 Moore's Federal Practice*, 65.32, 65.33.

WHY INJUNCTIVE RELIEF SHOULD BE GRANTED:

To obtain a preliminary injunction under Rule 65(a), the movant must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in absence of the injunction; (3) that the balance of equities tips in the movants favor; and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975);

**The court may apply a sliding scale approach that permits a strong showing of one element to counter-balance a weaker showing of another.** *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-1135 (9th Cir. 2011) (Supreme Courts *Winter* decision merely rejected injunction based on possibility of irreparable harm, and did not reject balancing approach that is particularly appropriate to issuance of equitable relief); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010).

In this case the court should apply a sliding scale approach that permits a strong showing of one element to counter-balance a weaker showing of another, especially where she is a 71 year old disabled senior citizen who will be made homeless without modification and can afford to pay the HAMP rate.

- 4 -

1) LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff is likely to succeed on the merits for several reasons.

A. Plaintiff's disability under ADA (42 USC §12101) is documented. **Exh. A**

B. Plaintiff can prove WFB breached a promise not to sell her home. **Exh. B**

C. Plaintiff can prove she was eligible for HAMP relief when denied. **Exh C**

2) LIKELIHOOD OF IRREPARABLE HARM ABSENT INJUNCTION

Under California law it is conclusively presumed that a single family residence cannot be compensated with money damages.  Civil Code §3387. *Demarist v. Quickloan Funding, Inc.* 2009 WL  940377 at 9 (Cal.2009).

Many courts have found the loss of one's home, in and of itself, is enough to warrant injunctive relief.  *Nichols v. Deutsche Bank National Trust  Co.* WL 41811 at 2 (So. Dist. CA 2007).  *United Church of Medical Center v. Medical Center Committee* 689 F.2nd. 693, 701 (7th. Cir 1982).

3) BALANCE OF EQUITIES TIPS IN MOVANTS FAVOR

Plaintiff will lose her long-term residence if the trustee is permitted to sell her property on 12/19/12.   For the first time in her life, plaintiff will find herself homeless the weekend before Christmas.  Plaintiff has no family in the area.  Most of her friends have passed on or reside in remote locations.

Plaintiff would also lose passive income she receives from home tenants. At 71 the stress of losing her home and relocation could cause a heart attack.

In contrast defendants will suffer no harm because they have a secured interest in the real property by way of a recorded trust deed and a note. Defendants can liquidate the asset immediately if they prevail.

EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There is a poor home sales market in a depressed economy, especially in the desert areas.  Homes have dropped significantly in the past few years. A vacant property may result in vandalism and/or destruction.   Defendants can only gain by delaying foreclosure until this court makes its decision.

Since hardship tips heavily to plaintiff she need only establish a serious question going to the merits upon which she has a better than fair chance at prevailing.   *Miller v. Cal. Pad Med.* 19 F.3rd. 449, 456 (9th. Cir 1994)


4)   THAT AN INJUNCTION IS IN THE PUBLIC INTEREST

There is a strong public interest in assuring that when taxpayers income is taken in federal taxes that those funds are used for their intended purpose.

WFHM received millions in taxpayer TARP funds to provide relief to distressed homeowners facing foreclosure.  Apparently WFHM is not using those funds for their intended purpose; i.e. the loan servicer is taking money under the pretext that funds are being used to modify loans to keep HAMP eligible buyers in their homes to stabilize the housing market.

Instead servicers are converting funds to their own profits and benefit. This is a breach of the public trust and lender fraud as a matter of law. Accordingly, this court should hold defendants accountable for bank fraud.


BOND SHOULD NOT BE REQUIRED UNDER THESE CIRCUMSTANCES

A district court may, at its discretion, determine a bond is unnecessary see *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421422 & n.3 (4th Cir. 1999); *Doctors Associates v. Distajo,* 107 F.3d 126, 136 (2d Cir. 1997) *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 95 O.&G.R. 549 (10th Cir. 1987). *See* 13 Moore's Federal Practice, 65.52 ;

EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

1    In *People ex rel. Van De Kamp v. Tahoe Regl Planning Agency*, 766 F.2d
2  1319, 13251326 (9th Cir. 1985)  the court held that a federal district court
3  has discretion to dispense with a security bond requirement when requiring
4  security would effectively deny access to judicial review.

5    In *Crowley v. Local* No. 82, 679 F.2d 978, 1000 (1st Cir. 1982 the court
6  held that a district court acted within its discretion in not requiring bond
7  when plaintiffs were not able to afford security and bond requirement would
8  adversely affect enforcement of Title VII (42 U.S.C. 2000e2000e17) rights.

9    In *Pharmaceutical Socy v. New York State Dept of Soc. Servs.*, 50 F.3d
10 1168, 11741175 (2d Cir. 1995) the court upheld a waiver of bond requirement
11 based on lack of financial resources and fact that litigation was ultimately in
12 the public interest.

13    In *United States v. Bedford Assn*, 618 F.2d 904, 916917 n.23 (2d Cir.
14 1980)  the court found no abuse of discretion by district court in denying a
15 bond, when parties had ongoing relationship that will afford enjoined party
16 an opportunity to recoup losses if injunction was wrongfully issued.
17

18    See Connecticut General Life Insurance Co. v. New Images of Beverly Hills
19 321 F.3d. 878, 882 (9th. Cir. 2003).   Jorgenson v. Cassidy  320 F.2d. 906, 919
20 (9th Cir. 2003).  Phleger v. Countrywide Home Loans  (2007) WL 4105672 at 6
21 (No. Dist. Cal. 2007)
22

23    Under controlling case law plaintiff qualifies for a waiver of a bond as
24 she lacks the financial resources to post a bond, the litigation is in the public
25 interest to ensure taxpayer TARP funds are used for their intended purpose
26 and because the bank can recoup any loss from the equity in plaintiff's home.
27 The bank has a secured interest by a recorded trust deed ensuring collection.
28 The bank's investment is secured by the real estate itself.

- 7 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONCLUSION

**PLAINTIFF IS NOT LOOKING FOR A FREE HOUSE. PLAINTIFF IS NOT DENYING SHE BORROWED THE MONEY AND OWES IT BACK.**

Plaintiff is only asking the court to compel defendants to modify her loan under federal HAMP guidelines to which she qualifies as shown in Exhibit C. Plaintiff is prepared to pay, and will faithfully make the new payment under the HAMP loan modification as set forth in Exhibit C or whatever the court believes is equitable.   HAMP loans are modifying for 2% over 40 years now. The difference in payment under her current loan terms (7% at 30-years) compared to 2% fixed at 40 years under the HAMP relief program "**makes the home affordable**" as intended by Congress in enacting HAMP relief in 2009.

Plaintiff asks the court to compel defendants to make accommodations they are required to make under the provisions of the Americans with Disabilities Act as intended by Congress when it enacted the ADA scheme.

Plaintiff asks the court to issue a TRO to stay the pending foreclosure forthwith because her home is scheduled to be sold at auction on 12/19/12 and set a hearing for an Order to Show Cause why a preliminary injunction should not issue pending outcome of the litigation.


Respectfully submitted 11/28/12



*Nancy Duffy McCarron*

Nancy Duffy McCarron, Attorney for Plaintiff

- 8 -

EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

COUNSEL'S CERTIFICATION OF EFFORTS TO NOTIFY DEFENDANTS

The undersigned counsel for plaintiff makes this declaration based on personal knowledge and can testify under oath to the facts as presented. The facts presented in the verified complaint and this verified application are true to the best of my knowledge.  If this notice were processed under normal Federal Rules of Procedure it would be too late to save plaintiff's home from being sold by trustee 12/19/12.  On Monday, 11/26/12 I sent email notice, with a copy of the verified complaint and our intent to file it the next day to the representative of Wells Fargo Home Mortgage (Ernestina Leone) which she confirmed receipt by email.  I also emailed it to Victoria Adams, counsel for Cal-Western Reconveyance Corporation and believe she received the email. I emailed a copy of this application to the same agents for defendants today. I declare the above true under penalty of perjury & US law and that this certification was executed in San Bernardino on 12/1287/2012.

_Nancy Duffy McCarron_

Nancy Duffy McCarron, for plaintiff

VERIFICATION:

The undersigned has read the foregoing application for TRO and OSC and know the contents thereof.  As to the facts recited they are true of my own knowledge.   I declare under penalty of perjury and US law that the foregoing is true and correct and that this declaration was executed in Palm Desert, California on 11/28/12.

_Carole S. Alles_

CAROLE S. ALLES, plaintiff

- 9 -

EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

EXHIBIT  A

# JEFFREY L. KUPPERMAN, M.D.
## PULMONARY DISEASES & CRITICAL CARE MEDICINE

2403 CASTILLO STREET
SUITE 206
SANTA BARBARA, CA 93105

TELEPHONE   (805) 898-8840
FACSIMILE   (805) 898-8842
E-MAIL   jkupps@pol.net

## PULMONARY MEDICINE CONSULTATION NOTE

**PATIENT:**   **ALLES, CAROL**
**DATE:**   10-1-03
**PHYSICIANS:**   DR. PHIL SCHEINBERG, DR. TSAI (KAYSER CLINC, HUNTINGTON BEACH, CA)

### IDENTIFICATION AND CHIEF COMPLAINT:
Carol Alles is a 62 year old woman referred by Dr. Scheinberg for evaluation of a chronic cough with an abnormal CAT scan.

### HISTORY OF PRESENT ILLNESS:
The patient states that she first noticed a cough occurring at least eleven years ago. At that time, and since then, she has been followed closely at Kaiser Hospital in Huntington Beach by Dr. Tsai and states she has always been told that she had allergies. She has been treated with various inhalers. Nothing has really seemed to help very much. About three weeks ago she had a second episode of hemoptysis. This happened once before approximately five years ago. The blood was small mixed in with clear mucous and occurred for a few days at that time. She sought attention from Dr. Scheinberg in ENT who felt that she might have GERD and underlying pulmonary pathology. A CAT scan was done that confirmed significant bronchiectasis and she was referred here for evaluation. She continues to have her usual cough part of the time productive of clear mucous and part of the time dry and hacky in nature. The cough is much worse in the morning and on lying down. She has significant problems off and on with nasal congestion, coryza, reflux symptoms, heartburn and pyrosis, but these seem to be improved somewhat with a recent dose of Prevacid. Her cough has also been better with Prevacid. Otherwise there is no other history of recent malaise, fatigue, fever, chills, night sweats, weight loss, PND, PNA, orthopnea, pedal edema, palpitations, chest pains, worsening dyspnea, exertional dyspnea, wheezing. There is no recent history of worsening dysphagia, or hoarseness.

### PAST MEDICAL HISTORY:
SURGERIES:  Breast implants, benign breast cyst removed.
MEDICAL ILLNESSES: History of GERD and allergies. Otherwise, denies any history of childhood asthma, tuberculosis, valley fever, bronchitis, pneumonias, thyroid disease, renal disease, liver disease, hepatitis, peptic ulcer disease, hypertension, diabetes, heart disease, or heart murmurs. Pneumovax never, fluvax yearly, and ppd negative in the past.

### SOCIAL HISTORY:
HABITS: Tobacco:  None.  Alcohol: None .
HABITATION:  Born in Philadelphia. Has lived in New Jersey, Colorado, and now California.
OCCUPATION:  She has done office work in the past.  There is no other known environmental or occupational exposure history to asbestos, silica, or other organic or inorganic dusts, fumes, chemicals, gasses, or carcinogens.
PETS:  None
RECENT TRAVEL HISTORY:   She was in Mexico, Europe, and the Caribbean but none, otherwise, none recently outside the country or through the Central Valley.

### FAMILY HISTORY:  One child alive and well. There is no family history of asthma or other lung disease.

### ALLERGIES:  None known to medications.

### CURRENT MEDICATIONS:
Prevacid 30 mg po qd
Multi-vitamins qd

### REVIEW OF SYSTEMS:  *All systems are non-contributory, except for what is stated in the HPI, and below.*
GENERAL:  No new malaise or fatigue.
HEME/LYMPHATICS:  No new lymph node swelling.

FELLOW, AMERICAN COLLEGE OF PHYSICIANS / FELLOW, AMERICAN COLLEGE OF CHEST PHYSICIANS
DIPLOMATE, AMERICAN BOARD OF INTERNAL MEDICINE / PULMONARY DISEASES / CRITICAL CARE MEDICINE

ALLES, CAROL
October 1, 2003
Page 2 of 3

SKIN: No new rash, eruptions, jaundice, bruising, or pruritus.
ALLERGY/IMMUNOLOGIC: No new hives or urticaria.
HEENT: No new headaches, dizziness, lightheadedness, or vertigo, changes in vision, hearing, taste, or smell, epistaxis, history of nasal polyps, or sore throat.
ENDOCRINE: No new thyroid swelling or neck lumps, breast lumps or nipple discharge, polyuria or polyphagia.
RESPIRATORY: Please see HPI.
CARDIOVASCULAR: No new palpitations, tachycardia, or irregular heart rhythm.
GI: No new nausea, vomiting, abdominal pain, hematemesis, hematochezia, other GI bleeding, or change in bowels.
GU: No new dysuria, hematuria, frequency, or excessive nocturia.
MUSCULO-SKELETAL: No new arthralgias or joint swelling.
NEUROLOGIC: No new difficulties with speech, stroke, paresis, numbness, syncope, seizures, or gait disturbance.
PSYCHIATRIC: No new anxiety, depression, or mood changes.

**PHYSICAL EXAMINATION:**
VITAL SIGNS: Weight: 131 lbs. Height: 66". Temperature: 98. Blood pressure: 140/80. Pulse: 80 and regular. Respirations: 14 and non labored.
GENERAL/CONSTITUTIONAL: Well nourished, non-toxic, and in no acute distress.
LYMPHATICS: No cervical, supraclavicular, axillary, inguinal, or epitrochlear adenopathy.
SKIN: No lesions, rashes, or nodules. No icterus, ecchymoses, or purpura.
HEENT: Normocephalic; pupils equal, round, reactive to light and accommodation; extra-ocular movements normal; conjunctivae normal; fundi benign. TM's intact. Nares without erythema, polyps, or exudates. Septum midline; turbinates normal. Oropharynx not injected. Teeth without active caries. Gums normal. Tongue normal.
NECK: Supple without thyromegaly, masses or nodules. No jugular venous distention noted. Carotids 2+ bilaterally and symmetrical with normal upstrokes and without bruits.
CHEST: Slight expiratory wheeze, squeak, and rhonchi heard on the right side posteriorly.
LUNGS: Normal, symmetrical expansion on deep inspiration. Normal respiratory effort noted. Lungs clear to auscultation and percussion without a prolonged expiratory phase on forced expiratory maneuver. No wheezes, rales, rhonchi, or rubs appreciated. Palpation is normal.
BREASTS: Not examined.
CARDIAC: Normal S1and S2; no murmurs, gallops or rubs appreciated; no increased P2. PMI is normal at the left mid-clavicular line, without thrill.
ABDOMEN: Soft and benign; without organomegaly, masses, or tenderness. Bowel sounds are normal. No fluid wave or shifting dullness. No abdominal bruits.
GENITAL/RECTAL: Not examined.
PELVIC: Not examined.
EXTREMITIES: No clubbing, cyanosis, or edema. Nails and nail beds are normal. Pulses are all 2+ bilaterally and symmetrical in upper and lower extremities. No calf tenderness or Homan's sign.
NEUROLOGIC: Grossly physiologic.

**CHEST X-RAY:** CAT scan of the chest is reviewed from 9-17-03, but no old x-rays are available for review. This is the first CAT scan she has ever had she states. It confirms significant bronchiectasis scattered throughout the right middle lobe, right lower lobe, left lingula, and scattered throughout. Bilateral breast implants are seen that are reported to possibly show that the right breast implant has pulled away from the outer layer that could indicate an implant rupture.
**PULMONARY FUNCTION TESTS:** Flow loops reveal an FEV1 of 1.85 liters, 72% of predicted with an FEV of 25/75%, 50% of predicted.
**PULSE OXIMETRY:** Pulse oximetry is 97% on room air at rest, and is 96% walking at a comfortable pace down the hall.
**LABS:** No other lab tests are available for review.

**CONCLUSIONS & RECOMMENDATIONS:**
1.   **Chronic bronchiectasis.** Most of the patient's cough is undoubtedly due to this. Her hemoptysis is likely due to this as well. At this point I have suggested a brief course of antibiotics to take care of any ongoing acute

ALLES, CAROL
October 1, 2003
Page 3 of 3

infection. She will start Tequin 400 mg po qd for the next week and use a updraft nebulizer that she has at home with Albuterol 2.5 mg and Atrovent .5 mg bid and prn. I have suggested that she get an accapella device or flutter valve. If those are not available she should get vest physiotherapy to improve her chest physiotherapy, pulmonary toilet, and help with secretion control. IgE level, aspergillus serologies, routine lab tests, and bronchoscopy should also be done to rule out ABPA and mycobacterium avium complex infection. These would not to be treated much differently and more aggressively than prn antibiotics and regular nebulized medication with chest physiotherapy. Her CAT scan and PFT's should be followed closely, at least every six months, to make certain there is no worsening progressive disease that would need additional aggressive therapy. She may need inhaled corticosteroid therapy if problems persist. I will be happy to see her on a prn basis in the future, but we will hold off on ordering labs, bronchoscopy, and further follow-up since she has Kaiser insurance. She will see if she can obtain these with her doctors at Kaiser and let me know if we can be of assistance in the future. She agreed to call before should problems worsen.

2. **Chronic rhinitis.** A CT of the sinuses should be done for completeness to see if there is chronic sinusitis, but this problem needs to be treated aggressively to prevent worsening of her cough and worsening of problem #1 above. I suggested Flonase two whiffs each nostril qd at this point.

3. **GERD.** We should aggressively control this also to help control her cough and problem #1 above. She will continue the Prevacid 30 mg qd with elevation at the head of the bed and anti-reflux measures.

4. **Question right breast implant rupture.** This possibility was raised on the CAT scan and a MRI was suggested. I will leave this to her physicians in Kaiser to look further in to.

5. **Periodic health exam.** She should be given a pneumovax and continue to get updates of her fluvax yearly. She is followed closely by Dr. Tsai at Kaiser.

**JEFFREY L. KUPPERMAN, M.D., FACP, FCCP**

*Total time spent face-to-face with patient: 90  mins, including 80  mins. of discussion and counseling regarding prognosis, differential diagnosis, risks, benefits, and alternatives of treatment, instructions, compliance, and risk reduction, as well as, discussion and coordinating care with the patient's other health care providers.*
*ICD-9 codes:494, 031.80, 786.2, 793.1, 794.2, 786.7, 477.9, 530.11*
*CPT codes:99245, 94375, 94761*

*cc: Dr. Tsai (Kaiser), Dr. Scheinberg, patient (letter)*

EXHIBIT   B

Page 1 of 3

*WELLS FARGO HOME MORTGAGE*
*RETURN MAIL OPERATIONS*
*PO BOX 10368*
*DES MOINES IA 50306-0368*

**WELLS FARGO**

11/08/12

1MB          01840/001840/003342 0012   3 AGPS7UHP601 708

CAROLE ALLES
43060 ILLINOIS AVENUE
PALM DESERT, CA  92211-7551

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | (866) 278-1179 |
| Telephone: | (800) 416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon - Fri, 8 AM - 11 PM |
| | Sat, 9 AM - 3 PM CT |
| | |
| Loan Number: | 0154270391 |
| Property Address: | 43060 Illinois Avenue |
| | Palm Desert CA 92211 |

Subject: Your request for mortgage payment assistance
Note: We service your mortgage on behalf of your investor, Federal Home Loan Mortgage Corp - Freddie Mac.

Dear Carole Alles:

We're responding to your request for mortgage assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Here's what we found**
We carefully reviewed the information you sent us and explored a number of mortgage assistance options. At this time, you do not meet the requirements of the program because:

Based on your documented monthly income, we are unable to create an affordable payment that meets the requirements of the program.

Please note: the information above is the primary reason that you are not eligible for mortgage assistance, however there may be other reasons related to the decision. If you have any questions about our decision, please call your Home Preservation Specialist at the number listed at the bottom of this letter.

**What you need to do if you want to appeal this decision**
You have the right to request an appeal of the above-noted decision. If you want to appeal the decision, please follow these important steps:
1. Carefully review this letter and the reason you do not meet the requirement of the program.
2. If you have a reason to believe our determination was incorrect and want to appeal the decision, call your home preservation specialist right away at the number listed at the bottom of this letter. We will discuss what documents you are required to submit to support your appeal. You must ensure that we receive all the information requested before 30 calendar days from the date of this letter. If we do not receive all required documentation from you by the deadline, we cannot move forward with your appeal.

   • Mail all required documents (and include your loan number) to:



7080154270391HP801

| Account Information | |
|---|---|
| Loan Number: | 0154270391 |
| Property Address: | 43060 Illinois Avenue Palm Desert CA 92211 |

1000 Blue Gentian Road
Suite 300, MAC X9999-01N
Eagan, MN 55121

- Or fax all required documents to your home preservation specialist at the fax number listed at the bottom of this letter (and include your loan number).

3. After we receive your documentation, you will receive an acknowledgement letter outlining next steps in the appeals process.
4. Your home will not be sold in a foreclosure sale during the appeal period.

**Your important next steps**

There may be other mortgage assistance options available to help you avoid a foreclosure sale. Please contact us to learn about the options listed below:

- If you're interested in staying in your home, you may be eligible for help through a different mortgage assistance program.
- If you cannot or prefer not to stay in your home:
  - If the present value of your home is higher than your mortgage balance, you can try to sell your home before the foreclosure sale takes place.
  - If your mortgage balance is higher than the present value of your home, you may want to consider what is known as a "short sale". This allows you to sell your home privately for an agreed-upon amount that is less than what you owe on your mortgage. To start the short sale process, it's important for you to work with us in advance to set the selling price.
  - The remaining option is a deed in lieu of foreclosure. You can voluntarily deed your property to Wells Fargo, transferring ownership of your home to us.

**What you need to know about foreclosure**

We will continue to work with you to help you avoid a foreclosure sale. Please note the following:

- If your mortgage has been or will be referred to foreclosure, that process moves forward at the same time.
- During the appeal period (within 30 days of the date of this letter), a foreclosure sale of your home will not be held.
- As part of the foreclosure process, you may see steps being taken in proceedings or receive notices from a third-party attorney delivered by mail.

**Call us now**

We must hear from you. In order for us to help you, it's critical that you contact us immediately to discuss your options. Please call the phone number listed below.

Sincerely,

*Carmen Saldana*

Carmen Saldana
Home Preservation Specialist
Wells Fargo Home Mortgage



7080154270391HP601

Page 3 of 3

| Account Information | |
| --- | --- |
| **Loan Number:** | 0154270391 |
| **Property Address:** | 43060 Illinois Avenue |
| | Palm Desert CA 92211 |

Ph: 1-877-242-5052 ext. 29489
Fax: 1-866-590-8910

**Struggling with other expenses? Help is available.**

Sometimes customers have trouble keeping up with their monthly expenses, other than their mortgage payments. If this is happening to you, help is available at no cost from a HUD-approved, non-profit credit counseling agency. Simply call a counselor who will work closely with you to lower your other monthly payments, take your financial circumstances into consideration, and create a budget plan to work for you. To find an agency in your neighborhood, call 1-800-569-4287 or call the HOPE Hotline at 1-888-995-HOPE.

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2012 Wells Fargo Bank, N. A. All rights reserved. Equal Housing Lender. NMLSR ID 399801



7080154270391HP601

EXHIBIT   C



**MAKING HOME AFFORDABLE.gov**
An official program of the Departments of the Treasury & Housing and Urban Development

11-23-2012 09:04 pm

# NPV Evaluation Results

Based on the information you provided your mortgage may pass a HAMP NPV evaluation and you may be eligible for a HAMP modification. Be sure to save a copy of the information below and share it with your mortgage servicer to discuss options available to you.

Please note, CheckMyNPV.com provides only an estimate of a servicer's NPV evaluation. While the NPV formula used is required to be the same as your mortgage servicer's, differences in input data and other industry-related data may result in different outputs.

Your session has ended and you will not be able to run an NPV evaluation without completing this process again.

## Information Calculated For You

For more information about the proposed modification, visit the Frequently Asked Questions.

| | |
|---|---|
| NPV Date | 11-23-2012 |
| Unpaid Principal Balance of the Proposed Modification | $145271.72 |
| Principal Forbearance Amount of the Proposed Modification | $68728.29 |
| Interest Rate of the Proposed Modification | 2.0000% |
| Principal and Interest Payment of the Proposed Modification | $439.92 |
| Amortization Term of the Proposed Modification | 480 months |

## Information That You Provided

| | |
|---|---|
| Which Best Describes You? | Homeowner |

### Servicer & Investor Information

| | |
|---|---|
| Your Investor | Freddie Mac |

### Homeowner & Property Information

| | |
|---|---|
| Data Collection Date | 11-23-2012 |
| Borrower Credit Score | 775 |

| | |
|---|---|
| Co-Borrower Credit Score | not provided |
| Monthly Gross Income | $2,132.00 |
| Property State | CA |
| Property ZIP Code | 92211 |
| Property Value | $113,000.00 |
| Property Valuation Type | Estimated/AVM |

**Mortgage Information**

| | |
|---|---|
| Original Loan Amount | $230,000.00 |
| First Payment Date | 09-01-2006 |
| Do you have a fixed rate mortgage? | Yes |
| Unpaid Principal Balance of Your Mortgage | $214,000.00 |
| Total First Mortgage Debt | $214,000.00 |
| Interest Rate of Your Mortgage | 7% |
| Remaining Term (Months Remaining) on Your Mortgage | 286 |
| Mortgage Insurance Coverage Percent | 0% |
| Modification Fees Paid by Investor | $0.00 |

**Monthly Payment Information**

| | |
|---|---|
| Principal and Interest | $1,491.78 |
| Real Estate Taxes | $139.00 |
| Hazard and Flood Insurance | $55.00 |
| Homeowner Association Fees and Escrow Shortage | $27.00 |
| Months Past Due | 10 |
| Imminent Default | Yes |

# Important information regarding NPV Evaluation results obtained from this site.

The net present value ("NPV") of your mortgage is one of many factors that need to be considered in determining whether you are eligible for participation in the Home Affordable Modification Program ("HAMP"). For this reason:

- The NPV evaluation results generated through use of this Site ("NPV Results") are not evidence of, nor are they determinative of, your or any other person's or entity's eligibility for

participation in any federal, state, local, Fannie Mae, Freddie Mac or other mortgage foreclosure prevention or assistance type plan.

- This calculator uses the same underlying formula for calculating NPV as that used by each participating mortgage servicer, these results may vary from that of this calculator due to differences in data inputs.

- The NPV Results for a mortgage that are the same as or similar to NPV evaluation results obtained or reported by any other person or entity ("Other NPV Evaluation Results") in connection with that mortgage do not constitute in any way any endorsement, statement, confirmation, verification or certification of accuracy or reasonableness by Treasury, its financial agents or any person or entity of such Other NPV Evaluation Results.

- The NPV Results for a mortgage that differ from Other NPV Evaluation Results in connection with that mortgage do not constitute in any way any suggestion, inference, statement, confirmation, verification or certification by Treasury, its financial agents or any person or entity of any error, omission or illegal activity by any person or entity.

## Helpful Resources

Frequently Asked Questions | Glossary of Terms | CheckMyNPV.com Quick Start Guide

This information is provided subject to, and may only be used in compliance with, the Terms of Use and other requirements, policies and disclaimers contained on CheckMyNPV.com.

www.Treasury.gov | www.WhiteHouse.gov | www.HUD.gov | www.FinancialStability.gov