1  **Nancy Duffy McCarron**, CBN 164780
   Law Office of Nancy Duffy McCarron
2  950 Roble Lane
   Santa Barbara, CA  93103
3  805-450-0450   fax  805-965-3492
   nancyduffysb@yahoo.com
4        Real Estate Broker Lic. 853086
5  Attorney for Plaintiff Carole S. Alles

6

7                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
8                         [EASTERN DIVISION]

9

| | |
|---|---|
| 10  CAROLE S. ALLES                  Plaintiff, | Case No. 5:12-cv-02095-MWF-DTB        filed 11/29/12 |
| 11                      v. | **OPPOSITION TO RULE 12(b)6 Motion** |
| 12  WELLS FARGO BANK, NA; *dba* Wells Fargo Home Mortgage | Filed by WELLS FARGO BANK NA  and  FEDERAL HOME LOAN MORTGAGE CORPORATION's with Declaration of Plaintiff's Counsel |
| 13  FEDERAL HOME LOAN | RE: permission to exceed 25 pages  LR 11-6 |
| 14  MORTGAGE CORPORATION, *aka* FHLMC; *aka Freddie Mac*; in its | |
| 15  corporate capacity, as trustee of an unidentified REMIC trust holding | filed with **REQUEST FOR JUDICIAL NOTICE** and |
| 16  plaintiff's debt obligation as security without her knowledge or consent to | **OBJECTIONS** to Request for Judicial Notice filed by defendants Wells Fargo Bank, NA and FHLMC |
| 17  securitization; as conservatee under the conservatorship of defendant Federal | |
| 18  Home Finance Agency [FHFA] as its conservator of unknown duration; | Judge:    Honorable Michael W. Fitzgerald |
| 19  | Date:     **July 8, 2013** |
| 20  DIRECTOR OF FEDERAL HOME | Time:    10:00 a.m. |
| 21  FINANCE AGENCY, *aka* FHFA, as conservator for defendant *Freddie Mac* | CTRM:  1600 |
| 22  | |
| 23  CAL-WESTERN RECONVEYANCE CORPORATION, *aka* CWRC in its | |
| 24  corporate capacity and as the foreclosing trustee on plaintiff's real property | |
| 25  | |
| 26  DOES 1-100               Defendants | |

27

28     OPPOSITION TO WELLS FARGO & FHLMC'S FRCP 12(B)(6) MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................. ii,iii

TABLE OF AUTHORITIES...........................….....…............….... iv,v

I.      INTRODUCTION........................................................ 1

New York Law Governs........................................................ 3

Foreclosure Was "Fruit Of A Poisonous Tree"[Invalid Substitution]......................... 4

The Underlying Reasons For Enforcing Technical Requirements of New York Law........ 7

Damages Were Adequately Alleged.................................…....................... 10

II.     STATEMENT OF FACTS ..................................................... 11

III.    LEGAL STANDARD ....................................................... 13

IV.     LEGAL ARGUMENTS ..................................................... 14


A.   ALL OF PLAINTIFF'S CLAIMS ARE VALID UNDER CURRENT LAW............... 14

1.  Declaratory Relief ....................................................... 14

Wells Arguments Against Declaratory Relief Are Misplaced........................... 15

2.  Cancellation of Instrument & Injunction [Civil §3412-3422] ............................ 18

3.  Slander of Title........................................................... 18

4.  Quasi Contract & Unjust Enrichment ....................................... 20

5.  Violation of 15 USC §1641(g)  TILA §131(g) .................................21

6.  Quiet Title ............................................................. 23

7.  B&P §17200 et seq [Unfair, Unlawful Business Practices]............................. 24

8.  Breach of Contract........................................................28

9.  Violation-Civil §2923.5 Unlawful Pre-Foreclosure Acts ............................…..... 30

Federal Law Does Not Preempt Compliance With Civil Code §2923.5............... 31

Civil Code §2923.5 Falls Under OCC Regulation's Savings Clause................. 34

This Court Must Predict What the 9th Circuit Court of Appeal Would Do........... 35

ii

10. Civil Conspiracy-Defraud, violate codes & Due Process ……………………………36

11. Fraud (Actual & Constructive) Civil Code §§1572-1575…………………….……… 37

   B& P §2923.1.  Mortgage broker  is a fiduciary……………………………………. 38

   Why The Assignment To Freddie Mac Corporate Was A Fraud…………………. 42

12. 5th. & 14th. Amendment Due Process Violations …………………………………43

13. Violations of ECOA discrimination [Age & Disability] ……………………………  44

14. Violations of California Homeowners Bill of Rights …………………………………  45

V. CONCLUSION ……………………………………………………………..…… 48

   Defendants Contentions are Contradicted by Their Own Documents…………….. 48

   Declaration of Counsel  re:  Permission to exceed 25 pages due to complexity ………….. 49

   PROOF OF SERVICE …………………………………………………………….. 50

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

# TABLE OF AUTHORITIES

## CASES:

ecf/cacd page

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) ................................................21

*Aguayo v. U.S. Bank, N.A*., 653 F.3d 912, 921-22 (9th Cir. 2011)...........................................38

*Armeni v. America's Wholesale Lender*, 2012 WL 603242 (C.D. Cal. 2012)...........................22

*Ashcroft v. lqbal.* 129 S. Ct. at 1949 ......................................................................................26

Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990)...........................19

*Bank of the West v. Sup. Ct.* 2 Cal.4th 1254, 1267 (1992) ......................................................33

*Barrionuevos v. Chase,* C-12-0572 EMC (ND Cal-2012)..................................14, 25, 31, 32, 42

*Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). ............................................................24

Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959)................................................21

*Bell Atl. Corp. v. Twombly,* 550 U.S.544,555 (2007). ..........................................................19

*Bernardi v. JPMorgan Chase Bank, N.A*. 11-cv-4212, 2012 WL 2343679 (N.D. Cal.-2012) ..............26

*Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). ........................................................19

*Brown v. Spohr,* 180 N.Y. 201, 209-2 10 (N.Y. 1904) ............................................................9

*Burgoyne v. James,* 282 N.Y.S.18,21 (1935)..........................................................................9

Burlington Northern R. Co. v. Crow Tribal Council, 940 F.2d 1239, 12431244 (9th Cir. 1991). ...........20

*Caravantes v. California Reconveyance Co.* OCV1407. 2010-WL4055560 (S.D.Cal.Oct.14,2010) .......37

Carlson, et al v. Baldacci (1967) 257 CA.2d 212 ..................................................................35

Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters U.S., 497 F.3d972, 975 (9th Cir. 2007) ............19

*Chern v. Bank ofAmerica,* 15 Cal.3d 866, 876 (1976)..........................................................33

*Clemens v. Chase* No. C-09-3365 EMC, 2009 WL 4507742, at *7 (N.D.Cal-2009).........................31, 33

*Cotati v. Cashman,* 29 Cal.4th 69, 80 (2002) ......................................................................21

Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp., 642 F.3d 849, 853 (9th Cir. 2011) .........20

*Cousins.* 568 F.3d at 1067 (9th Cir.2009). ..........................................................................37

*DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376 at *6 (N.D. Cal. Jan. 26, 2011 ...........................36

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal.2007 ...............................26

*FDIC v. Dintino* 167 CA.4th 333, 346 (2008). ......................................................................26

*Fecht v. Price Co.*,70 F.3d 1078, 1080 n.1(9th Cir. 1995). ....................................................24

Fontenot v. Wells Fargo Bank, NA., ........................................................................................14

*Fonua v. First Allied Funding*, No. C 09-497, 2009 WL816291, at *3 ..................................29

i

*Foulkrod v. Wells Fargo Fin. CA Inc.*, CV 1 1-732-GHK (AJWx) (C.D.Cal-2011) ...............................30

*Gomes v. Countrywide,* 192 CA.4th 1149 (2011), ...........................................................14

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 n. 6 (9th Cir. 1998). ...............................20

*Gudger v. Manton* [cited by defendants ...............................................................25

*Hardwood v. BOA*, 2:10-cv-02450-GEB-KJM, 2010 WL 5287539 at*3 ...............................30

*Hawkins v. United States*, 96 U.S. 689 (1877); ...............................................................35

*Hoag v. Howard* 55 Cal.564, 565 (1880) ...............................................................2

*In re Estate of Plotkin,* 290 N.Y.S. 2d 46,49 (N.Y. Sur. 1968) ...............................................4,9

*Johnson v. HSBC Bank* (SD Cal-2012) 3:11-cv-2091-JM-WVG ...............................14, 21, 31,32, 45

*Junger v.Bank of America N.A.*,2012 WL 603262 at *3 (C.D.Cal.2012). ...............................22

*Kachelon v. Markowitz* (2008) 168 C.A. 4th. 316 ...............................................................24

*Khoury v. Macy's of Cal.,Inc.*,14 CA 4th 612, 619 (1993) ...............................................32, 33

Kingman Holdings, LLC v. CitiMortgage, Inc., 2011 WL 1883829 (E.D. Tex. 2011) ...............................23

*Lona v. Citibank, N.A.*,WL 6391584, *14..l6 (CA 6-2011) ...............................................29

*Mabry v. Superior Court* (2010) 185 CA.4th 208-- ...............................................................36

Manhattan Loft, LLC v. Mercury Liquors, Inc., supra, 173 Cal.App.4th at p. 1057) ...............................25

Mayfield v. First Nat1 Bank of Chattanooga, 137 F. 2d 1013 (6th Cir. 1943) ...............................9

*Menan v. US Bank, CIV.* S-12-0109 LKK/EFB(ED Cal2013) ...............................................14

MF. Farming, Co. v. Couch Distributing Co. 207 CA.4th 180, 200 (2012) ...............................24

*Naranjo v. SBMC* (SD Cal. 2012) No. 11-cv-2229-L(WVG) ...............................14, 22, 23, 26, 29, 31,32

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ...............................................19

New York Estate Powers & Trust §7-2.4 ...............................................................9, 10

Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821(2011 ...............................................34

*Onofrio v. Rice, 55* Cal. App. 4th 413, 424 (1997) ...............................................................29

*Osorio v. Wells Fargo Bank,* 2012 WL1909335 (N.D.Cal-2012)...............................................38

*Pey v. Wachovia Mtg*, 2011 WL 5573894 (N.D. Cal-2011) ...............................................38

*Peterson v. Cellco Partnr* 164CA.4th 1583, 1593 (2008). ...............................................26

Riverside Rancho Corp. v. Cowan, 88 CA.2d 197 (1948 ...............................................35

*Sacchi v. MERS,*11-cv-1658 AHM,WL2533029, *8-9 (CD Cal-2011) ...............................10, 14, 31

*Schafer v. Citi Mortgage*, Inc., 2011 WL 2437267 (C.D. Cal. 2011) ...............................14, 22, 23

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). ...............................................................16, 19

ii

*Seeley v. Seymour*, *supra*, 190 Cal.App.3d at p. 865 .............................................................25

Shaterian v. Wells Fargo Bank, 2011 WL ....................................................................38

*Skov v. US Bank,* 207 CA. 4th 690 (2012)...................................................................37

Snodgrass v. Prov.  Life & Accident Ins. Co., 147 F.3d 1163, 1166-1167 .....................20

*Steffel v. Thompson,* 415 U.S. 452, 458-460(1974). ...................................................20

*Stockton v. Newman,* 148 CA 2d 558, 564 (1957) .......................................................29

*Suarez v. BONY* (LA) 12-560082 (2013).................................................................24, 46

*Sullivan v. WAMU,* C-09-2161 EMC, 2009 Lexis104074,  (N.D.Cal-2009) ............31,33

Sumner Hill Homeowners v. Rio Mesa Holdings, LLC (2012) 205 CA.4th at 1030........25, 42

*Tamburri v. SunTrust,* 2011 WL 6294472 (ND Cal-2011) ........................................14

*Vogan v. Wells Fargo Bank*, N.A., 2011 WL 5826016 (E.D. Cal. 2011)............14, 22, 29, 30, 31, 32, 45

*Wells Fargo* (CD Cal-2011) cv-11-8586 CBM .............................................................37

Wheeler v. New Brunswick Co.,115 U.S.29(1885);.......................................................35

Whiteside v. United States, 93 U.S.247 (1876) .............................................................35

*Wise v. Wells Fargo Bank*, N.A.,-F.Supp.2d-2012 WL105887 at *6 (C.D.Cal.2012). ......14, 29

*Wright v. Rogers*, *supra*, "172 Cal.App.2d at pp. 366-367 ..............................................  25

*Yulaeva v. Greenpoint Mort Funding*, 2009 WL 2880393 at *15 (E.D. Cal. 2009)…………….…….16

# STATUTES:

CA Business & Professions Code §17200……………….…………………….…19,20,27,28,29,30

CA Civil Code §2923.5 (*Perata Mortgage Relief Act*)   …………....…….   32, 33, 36, 37, 38

CA Civil Code §2924…………………….……………………………….…7,9,11,12,15,21,48,49,51

CA Civil Code §2924.17……………………….…………………………..………….……….48,49,51

CA Civil Code §2934a (a) (1)……………………….…………………………….…....18

CA Code Civil Procedure §§372, 389…………….……………………...…………....…21

CA Penal Code §§532f(a)(4) and §115…………….………………….…………….2,11,12

Fed.R.Civ.P. Rule 12(b)(6)…………………….………………….…………….19,33

Fed.R.Civ.P. Rule 17(c)(1)(C)…………………….……………………….…………….21

12 USC §2605(f)(1)(a)…………………….…………………………………….16,29

15 USC §1640(a)(1) and (3)………………….……………………………….16,28

15 USC §1641(g) TILA §131(g)……………….……………………….......16, 27, 28, 29, 31, 32, 33

28 USC §2201(a)…………………….………………………….…..…………….20,21

28 USC §2202 ……………………….…………………….…………..……………….20,21

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

# I.   INTRODUCTION        (Freddie Mac Can't Have it Both Ways!)

There is inherent conflict in counsel's representation of both Freddie Mac and Wells Fargo as to the following issues: joint & several liability, subrogation & potential breach of contract claims against each other.  These involve the Freddie Mac Seller/Servicer Agreement Wells executed, under a duty to apply HAMP, HARP and other program rules conditional to federal grant money. The conflicts will become obvious to the court in considering arguments defense counsel offers. The court **must** differentiate **Freddie Mac Corporate,** who issues and guarantees Participating Certificates (Mortgage-Backed Securities) from **Freddie Mac Trustee** who holds notes & trust deeds as collateral to secure the return of *principal* & *interest* yields to PC investors in loan pools. Defendants artfully use only **Freddie Mac**--failing to identify *which* capacity to play it *both* ways. Excerpts below demonstrate those subtle differences to forewarn the court of attempts to deceive. The court <u>must</u> consider those distinctions in its analysis when <u>only</u> "**Freddie Mac**" is recited.

In a 3/17/13 answer to the complaint **Wells <u>admitted</u> selling Alles' loan to Freddie 9/13/06:**

> 10        16.    Answering Paragraph 16, Defendant admits that Freddie Mac purchased
> 11   Plaintiff's note on September 13, 2006.   Except as expressly admitted herein,   ◄**Wells Answer**, 3:10

Counsel artfully failed to identify which capacity Freddie Mac bought the loan [**corporate** or as **trustee**]?

<u>Freddie admits securitizing loans at</u>:  http://www.freddiemac.com/corporate/company_profile/our_business/

> In our Single-Family business, we use mortgage securitization to fund millions of home loans every year. Securitization is a process by which we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in global capital markets, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend.
>
> What makes the securitization process work? Families paying their mortgages every month. Because once a family moves into their home, their monthly payments of mortgage principal and interest are transferred ultimately to securities investors. When a family stops making payments – often due to loss of income – Freddie Mac steps in and makes those payments to securities investors. Managing this risk, known as credit risk, is how we generate revenue. Each time we fund a loan, we collect a credit guarantee fee from the lender selling us the loan. This fee is intended to protect us in case of loan default.   ◄FM homepage

FAC, Exh. I, "Participating Certificate Offering Circular" **Freddie <u>admits</u> the <u>true beneficiaries</u> <u>own undivided beneficial interests in each guaranteed loan</u>** securitized into Freddie Mac Trust.

> Freddie Mac issues and guarantees Mortgage Participation Certificates, or **"PCs."** PCs are securities that represent undivided beneficial ownership interests in, and receive payments from, pools of one- to four-family residential mortgages.   ◄FAC, Exh.I p.1 Guarantee

1

Freddie <u>admits</u> pooling & selling PC securities to investors <u>without</u> Securities & Exchange Commission oversight.

> The PCs are not tax-exempt. Because of applicable securities law exemptions, we have not registered the PCs with any federal or state securities commission. No securities commission has reviewed this Offering Circular.

◄FAC, Exh.I p.1 no SEC

Freddie <u>admits</u> that it acts in a **Corporate** capacity, as the REMIC PC *issuer* and *guarantor*.

> Issuer and Guarantor . . . . . . . . .    Federal Home Loan Mortgage Corporation, or **"Freddie Mac,"** a shareholder-owned government-sponsored enterprise.

◄FAC, Exh. I, p. 4

Freddie <u>admits</u> it is Master Servicer, meaning Wells is a *sub-servicer* for Freddie Mac as **Trustee**.

> Servicing . . . . . . . . . . . . . . . . . .    We are responsible for supervising the servicing of the Mortgages. We contract with mortgage servicers that perform most servicing functions on Freddie Mac's behalf and in accordance with standards we have established and may waive or change from time to time.

◄FAC, Exh. I, p. 4

Freddie <u>admits</u> once identified in a PC pool, loans can <u>not</u> be removed from or <u>added to the pool</u>:

> Once we have identified Mortgages to a PC Pool, Mortgages will not be removed from or added to that PC Pool unless there is a repurchase or substitution in one of the situations described below.

◄ FAC, Exh. I, p.39

Freddie <u>represents</u> to PC Holders that <u>all</u> legal actions are taken "<u>in the interests of the Holders</u>:"

> However, we may undertake any legal action that we believe is necessary or desirable in the interests of the Holders. We will bear the legal costs of any such action.

◄ FAC, Exh. I, p.42

Freddie <u>admits</u> [in choice of law clause] the Agreement will be <u>governed by New York trust law</u>:

> The Agreement is to be interpreted in accordance with federal law. If there is no applicable federal precedent and if the application of New York law would not frustrate the purposes of the Freddie Mac Act, the Agreement or any transaction under the Agreement, then New York law will be deemed to reflect federal law.

◄ FAC, Exh. I, p.42

Freddie <u>admits</u> the pools are classified as <u>grantor trusts</u> under Internal Revenue Code:

> Tax Status
>
> The arrangement under which a PC is created and sold and the related PC Pool is administered will be classified as a grantor trust under subpart E, part I of subchapter J of the Code and not as an association taxable as a corporation. As an investor in a PC, you will be treated for federal income tax purposes as the owner of a pro rata undivided interest in the underlying Mortgages.

◄ FAC, Exh. I, p.43

Freddie <u>admits</u> the PC's are "<u>real estate assets</u>" under Internal Revenue Code:

> PCs generally will be considered to represent "real estate assets" within the meaning of Section 856(c)(5)(B) of the Code. Interest income from the PCs generally will be considered to represent "interest on obligations secured by mortgages on real property" within the meaning of

◄ FAC, Exh. I, p.43

Freddie <u>admits</u> the <u>PC's hold a beneficial interest in each loan in the Trust</u>:

> If you purchase a PC, you will be treated as purchasing an interest in each of the underlying Mortgages at a price determined by allocating the purchase price paid for that PC among the

◄ FAC, Exh. I, p.44

2

**NEW YORK LAW GOVERNS THE GRANTOR TRUSTS FREDDIE MAC CREATED**

Freddie Mac Trusts are governed by New York law. [FAC ¶102-103; Exh. I, PCOC page 42] New York's well-settled, common law trust principles are relevant to analyze plaintiff's claims. Under New York law there are 4 essential elements to grantor trusts: (1) a designated beneficiary; (2) a designated trustee who is not the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to a trustee; and (4) actual delivery or legal assignment of the property to the trustee, with the intention of passing legal title to the trustee. *Brown v. Spohr,* 180 N.Y. 201, 209-2 10 (N.Y. 1904).   [see FAC ¶94-97]

Plaintiff alleged there was no actual delivery or valid assignment to Freddie Mac Corporate as Issuer on 9/13/06.  [FAC ¶94-95]. Under NY law, without a **valid** delivery of an asset in question to the trust, there are no rights conferred in a trustee under common law. Thus, if the trust fails to acquire property there is no trust over that property [*trust res*] which can be enforced. [FAC ¶94]

**Where the method of transfer is set forth in the Trust instrument, it is not subject to any variance or exception.** *New York Estate Powers & Trust* §7-2.4 ("If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.")  Congress recognized the importance of strict compliance with trust agreements and New York Trust Law. The bipartisan Congressional Oversight Panel observed:

**New York trust law requires strict compliance with the trust documents**; any **transaction by the trust that is in contravention of the trust documents is void, meaning that the transfer cannot actually take place as a matter of law**." As early as 1935 in *Burgoyne v. James,* 282 N.Y.S.18,21 (1935) the NY Supreme Court recognized that business trusts, also known as "Massachusetts trusts," are deemed to be *common law* trusts.  *In re Estate of Plotkin,* 290 N.Y.S. 2d 46,49 (N.Y. Sur. 1968) (characterizing common stock trust funds as "common Law trust[s]").  Other jurisdictions are in accord. *Mayfield v. First Nat1 Bank of Chattanooga,* 137 F. 2d 1013 (6th Cir. 1943) (**applying common law trust principles to pool of mortgage participation certificate holders**). **If the transfer for the notes and mortgages did not comply with the PSA, the transfer would be void, and the assets would not have been transferred to the trust.** Oversight Report Examining the Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation, @ page19 November 16, 2010) available for review at  http*:1/cop,* senate.gov/reports/library/report-111610-cop.cfm

**FORECLOSURE WAS "FRUIT OF A POISONOUS TREE"[INVALID SUBSTITUTION]**

Defendants argue plaintiff cannot challenge the purported Assignment. (MTD, page 1)
Plaintiff is not trying to enforce the Freddie Mac PC Agreement or claim any derivative benefits.
Plaintiff is addressing the legal effect of defendants' failure to follow terms of its own agreement.
Alles' loan is not part of Freddie Mac's Trust as a matter of law. *NY Est. Powers & Trust* §7-2.4.
Wells failed to assign the note to Freddie Mac <u>Corporate</u> (or record the trust deed in Riverside)
when it sold the loan on 9/13/06---the "Freddie Mac Settlement Date" shown in the FAC, Exh. B.
This was the day Freddie Mac <u>Trustee</u> identified the Alles' loan as a trust asset in a pool of loans.
Wells & Freddie Mac tried to cure the deficiency by having CWRC engage a known **robosigner,**
*Monica Gonzalez* to fabricate, execute, and record a fraudulent Substitution of Trustee on 7/27/12:

**SUBSTITUTION OF TRUSTEE**

T.S. NO.:1367335-10                                          120 256 980

WHEREAS, CAROLE ALLES, AN UNMARRIED WOMAN AND NANCY DUFFY, AN UNMARRIED WOMAN
was the original Trustor, FIDELITY NATIONAL TITLE INSURANCE COMPANY was the original Trustee, and
WELLS FARGO BANK, N.A. was the original Beneficiary under that certain Deed of Trust dated July 28, 2006 and
recorded on August 02, 2006 as Instrument No. 2006-0566295, in book XX, page XX of Official Records of
RIVERSIDE County, California, and

WHEREAS, the undersigned is present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to
substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder, in the manner in
said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes, CAL-WESTERN RECONVEYANCE CORPORATION a
California Corporation whose address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON CA 92022-9004 as
Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine
and/or neuter, and the singular number includes the plural.

Dated: 7-27-12                          WELLS FARGO BANK, N.A.
                                         BY CAL-WESTERN RECONVEYANCE CORPORATION
                                         AS ATTORNEY-IN-FACT

                                         Monica L. Gonzalez, A.V.P.                    ◄Defendants' RJN, Exh.2, p.29

The substitution was fraudulent because, since Wells <u>admitted</u> it sold the loan to Freddie Mac
on 9/13/06 (six years earlier) it could not substitute a trustee.  Only a <u>beneficiary</u> can substitute,
and in this case only if substitution were executed by 50% of PC holders.   Civil §2934a (a)(1)(B)
as expressly held in *Sacchi v. MERS,*11-cv-1658 AHM,WL2533029,*5 (CD Cal-2011):

> …Substitution of Trustee…is invalid because RCS had no beneficial interest in the Deed at
> the time it executed the Substitution of Trustee… It is true, as Defendants repeatedly assert,
> that California Civil Code §2924, et seq. authorizes non-judicial foreclosures in this state. It
> is not the case, however, that the availability of a non-judicial foreclosure process somehow
> exempts lenders, trustees, beneficiaries,  servicers, and the numerous other (sometimes
> ephemeral) entities involved in dealing with Plaintiffs from following the law." Part III Analysis

4

Notwithstanding the 7/27/12 SOT was invalid as Wells had no beneficial interest in the loan after 9/13/06 it was also fraudulent because the robosigner tried to act as "agent of an agent" which is not authorized under California law, and especially where it violates fiduciary duties; i.e. the CWRC employee/agent robosigner sought to **transfer the right to sell the property at a trustee sale**---generating profits)---**to itself**---the employer of the transferring robosigner/agent. This was a violation of California law and a breach of fiduciary duty rendering the transfer void:

Attorney-in-Fact

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent.These responsibilities include:
1. The legal duty to act solely in the interest of the principal and to avoid conflicts of interest.
2. The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.  You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property.

Probate Code §4128

The recording of an instrument containing deliberate misstatements, misrepresentations, or omissions is mortgage fraud.  Penal §§532f(a)(4) and §115.   Not only was this a criminal act but defendants failed to meet the most basic requirements set forth in the very foreclosure statute they invoke to authorize the foreclosure; i.e. Civil §2924 et seq.  Subsection (a)(1) expressly mandates that only a beneficiary may foreclose.  Substitution must be executed by 50% of the PC Holders.

Because the Substitution of Trustee was invalid, the subsequent recordings of the Notice of Default (rec.8/2/12), the Notice of Sale (rec.11/30/12) and purported assignment (rec.12/17/12) are invalid as "fruit of the poisonous tree." They were all executed by Wells who had no interest.

Defendants argue Plaintiff agreed in her DOT that her loan could be sold without prior notice. Because Wells *could have* assigned her loan does not mean the purported, belated assignment was effective.  Plaintiff challenges validity on the basis of defendants' failure to comply with New York trust law, IRS regulations, and terms of Freddie Mac's Offering Circular to investors. Plaintiff's claim is not that the purported assignment was **recorded** after a 9/13/06 Closing Date for the identified trust, but rather that it was **executed** after the Closing Date. This is not where an assignment was executed in 2006 but not recorded until 2012.  It was **executed** six years after the closing date. [see FAC ¶97; Exh.B (FM closing date 9/13/06 and Exh.C (12/7/12 assignment)]

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

1    The purported assignment (shown below) suffers from all of the same defects explained above:

ASSIGNMENT OF DEED OF TRUST   120256980

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
FEDERAL HOME LOAN MORTGAGE CORPORATION
C/O    3476 STATEVIEW BLVD
       FORT MILL SC 29715

all beneficial interest under that certain deed of trust dated July 28, 2006, executed by CAROLE ALLES, AN
UNMARRIED WOMAN AND NANCY DUFFY, AN UNMARRIED WOMAN, trustor, to FIDELITY
NATIONAL TITLE INSURANCE COMPANY, trustee, and recorded as Instrument No. 2006-0566295 on
August 02, 2006 in book N/A page N/A, of Official Records in the County Recorder's office of RIVERSIDE
County, CALIFORNIA describing land therein as

COMPLETELY DESCRIBED IN SAID DEED OF TRUST

and all rights accrued or to accrue under said Deed of Trust.

Dated:  12-5-12                    WELLS FARGO BANK, N.A. By Cal-Western Reconveyance
                                   Corporation as its attorney in fact

                                   Monica L. Gonzalez, A.V.P.

◄ Defendants' RJN Exh. 5, p.38

As shown above, Wells <u>admitted</u> it sold Alles' loan to Freddie Mac on 9/13/06.  [FAC, Exh. 2]

So, the question becomes "if Freddie Mac owned the loan since 9/13/06 why did the robosigner,

**Monica Gonzalez** have to assign the DOT **"by Cal-Western Reconveyance Corporation as**

**attorney in fact"** for Wells Fargo Bank, NA. to Freddie Mac six years later?"  This is absurd.

Wells argues it is foreclosing as "agent for beneficiary Freddie Mac."  If so, why the assignment?

If Wells is agent for Freddie Mac it could not delegate an "*agent of the agent*" as attorney-in-fact.

Why didn't Freddie Mac (the purported beneficiary) execute "Substitution of Trustee on 7/27/12?

Why didn't CWRC list <u>Freddie Mac Trustee</u> as beneficiary on its recorded SOT, NOT & NOS?

Wells had no beneficial interest to assign <u>six years</u> after it had already sold the loan on 9/13/06.

The only possible reason to ask a robosigner to execute and record a fraudulent assignment, is

because Wells & Freddie Mac knew there would be criminal liability under Penal §§534f &115.

Defendants knew they failed to comply with NY Trust law by not assigning and delivering the

original note and DOT to Freddie Mac <u>Corporate</u> so it could be timely conveyed into the trust.

Defendants knew the trust agreement forbids transfers into the trust after a closing date because it

would destroy the tax-free status of the entire REMIC trust exposing all parties to taxable events.

Freddie <u>admits</u> once identified in a PC pool, loans can<u>not</u> be removed from or <u>added to the pool</u>:

Once we have identified Mortgages to a PC Pool, Mortgages will not be removed from or added
to that PC Pool unless there is a repurchase or substitution in one of the situations described below.   ◄ FAC, Exh. I, p.39

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

### The Underlying Reasons For Enforcing Technical Requirements of New York Law

The Freddie Mac "*Participating Certificates Offering Circular*" [FAC, Exh. I] and the *Freddie Mac Master Trust Agreement* (under NY law) sets forth a specific deadline, method and manner required to fund the Trust with assets.  The highly technical requirements of trust formation and maintenance, as well as IRS codes are relevant and cannot be ignored for the following reasons:

The Freddie Mac Trust is not a lender, bank or servicer; rather, it is a special purpose vehicle established as grantor trust under NY trust law.   The Trust Issuer was to create securities to sell to investors and then use the proceeds to buy mortgage notes. Since securities were to be repaid by mortgage payments on notes the securities were labeled as "Mortgage Backed Securities." Freddie Mac's Master Trust Agreement specifies two purposes for the Trust:1) to establish that transfers of the mortgage notes are "**true sales**" that become bankruptcy remote, and 2) to meet the requirements of a Real Estate Mortgage Investment Conduit, or "REMIC" pursuant to the United States Internal Revenue Code.  [FAC ¶¶ 53, 76, 95,105, 217; Exhibit I].

Securitization is a practice of pooling and selling intangible debt obligations ("receivables") such as residential & commercial mortgages, auto loans or credit card debt, to a specially-created entity, typically a trust. The grantor trusts Freddie Mac created were New York trusts formed to act as Real Estate Mortgage Investment Conduits, or "REMICs," under IRS code, to be treated as "pass-through vehicles" qualifying for tax-free exemptions and bankruptcy remote protection. The securitized trust is not taxed on its own income when it is paid yields out of the receivables. The assets are bankruptcy remote; i.e. they are insulated from Freddie Mac's Corporate creditors. The trustee must ensure transfer of receivables are "true sales" and not a financing transaction.

While compliance may be inconvenient Defendants' request to disregard *its* obligations yet uphold its rights (to collect debts and foreclose properties) is improper, unfair and unlawful. **Defendants cannot have it both ways**.  **Defendants cannot enjoy benefits without obligations** Tax free benefits on the monthly yield of Alles' loan were conferred on defendants and investors. Plaintiff does not seek to challenge REMIC benefits or claim a right to consequent tax benefits. Plaintiff seeks only a declaration of the legally observable consequences of defendants' choices. Defendants misrepresent that *state* courts universally reject preemptive foreclosure challenges.

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

1    Defendants ignore California's district judges who regularly authorize foreclosure challenges.
2    Instead, defendants argue, "*It is well settled that California courts have refused to delay the non-*
3    *judicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to*
4    *challenge the right, power, and authority of a foreclosing beneficiary or beneficiary's agent to*
5    *initiate and pursue foreclosure*. [MTD, p. 1]   **Nothing could be further from the truth.**

6    The following 9th Circuit courts in California have denied Rule 12(b)(6) motions to dismiss
7    where securitization failed or assignments were fabricated, forged or back-dated to effect fraud.
8    *Vogan v. Wells Fargo,*WL*5826016,*7*(ED Cal-2011) [MTD denied;nearly identical fact pattern];
9    *Johnson v. HSBC Bank,*11-cv-2091 JM-WVG (SD Cal-2012) [MTD denied securitization claim]
     *Naranjo v. SBMC,*11-cv-2229-L(WVG)(SD Cal-2012);[MTD denied;decl.relief;quasi-K breach]
10   *Barrionuevos v. Chase,* C-12-0572 EMC (ND Cal-2012);[MTD denied on all claims; no tender]
11   *Tamburri v. SunTrust,* 2011 WL 6294472 (ND Cal-2011) [MTD denied; prel. injunction granted]
12   *Menan v. US Bank, CIV. S-12-0109 LKK/EFB*(ED Cal2013) [MTD denied; failed to modify loan]
     *Schafer v. Citi Mortgage,* WL*2437267* (CD Cal.2011)[MTD denied;decl. rel.& 15 USC§1641(g)]
13   *Wise v. Wells Fargo,*WL105887 at *6 (CD Cal-2012);[MTD denied;decl.rel; loan securitization]
14   *Sacchi v. MERS,*11-cv-1658 AHM,WL2533029,*5* (CD Cal-2011) [MTD denied; securitzation]:

15   **It is true, as Defendants repeatedly assert, that California Civil Code §2924, et**
16   **seq. authorizes non-judicial foreclosures in this state.  It is not the case, however,**
     **that the availability of a non-judicial foreclosure process somehow exempts**
17   **lenders, trustees, beneficiaries,  servicers, and the numerous other (sometimes**
     **ephemeral) entities involved in dealing with Plaintiffs from following the law**." *Id*
18

19   "Indeed, one of the very purposes of California's non-judicial foreclosure statutes is "**to protect**
20   **the debtor/trustor from wrongful loss of the property**." *Fontenot v. Wells Fargo Bank, NA.,*
21   198 CA.4th 256, 270 (2011).  Wells Fargo and Freddie Mac cannot hide behind non-judicial
22   statutory framework while they failed to comply with its most basic procedures on beneficiaries.
23   A recent audit by the San Francisco Assessor-Recorder reviewed 382 foreclosures from 2009 to
24   2011 finding that **84% contained at least one clear violation of California's foreclosure laws**.
25   The audit is available on the Assessor-Recorder's website at http://sfassessor.org.

26   Lenders, including Wells Fargo seize on *Gomes v. Countrywide,* 192 CA.4th 1149 (2011),
27   by straining its interpretation to tweak out that a homeowner cannot challenge a foreclosure or
28   his purported creditor's right to enforce a trust deed under any circumstances.   This is not true!

1     *Gomes* held that California Civil Code § 2924(a)(l) does not "provide for a judicial action to

2  determine whether the person initiating the foreclosure process is indeed authorized." *Id* @1155.

3  But the issue in *Gomes* was not whether the **wrong entity had initiated foreclosure**; but rather,

4  the issue was whether a company selling a property in the non-judicial foreclosure sale (MERS)

5  was authorized to sell by an owner of a promissory note.  *Id* (rejecting argument that a plaintiff

6  may test whether the agent initiating the foreclosure has the authority to do so; "[the recognition

7  of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure

8  on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process.

9  *Gomes* involved a challenge to whether an ***agent*** had the authorization of its principal, who was

10  the undisputed beneficiary under the deed of trust, to initiate foreclosure. It was not, as here, a

11  challenge to the ***principal'*** s claimed status as beneficiary under the deed of trust.

12     Here, even if the <u>only</u> assignment recorded were valid (it clearly is not) the foreclosure would

13  still be improper because the robosigner **Monica Gonzales**, purportedly assigned the security

14  from Wells Fargo Bank, NA (as its "attorney-in-fact") to Wells Fargo <u>Corporate</u>, which cannot be.

15  Freddie Mac <u>Corporate</u> could not accept conveyance of a **trust asset** (even if Wells could assign)

16  because such act would violate IRS codes, aTrust Agreement, and its fiduciary duty to investors.

17  Removing a trust asset would destroy the tax-free status under IRS REMIC trust tax exclusions.

18     Notably, the *Gomes* court distinguished a case the Gomes plaintiff cited precisely because, in

19  that case, "the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed

20  of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure

21  process. No such infirmity is alleged here." *Id.* Thus, *Gomes* explicitly distinguished the scenario

22  in which "*the plaintiff's complaint identified a specific factual basis for alleging that the*

23  *foreclosure was not initiated by the correct party.*" *Id.*  at 1156. ***Gomes* is therefore inapposite**.

24     This Opposition seeks to clarify many misstatements defendants made in its 12(b)(6) motion.

25  Plaintiff will establish that neither **Wells Fargo Bank, N.A.**["Wells"] alleged sub-servicer, nor

26  **Freddie Mac <u>Corporate</u>** (the purported "assignee" of the security) have any legal, equitable, or

27  pecuniary right in the debt obligation secured by plaintiff's real property.  Only Freddie Mac,

28  ***as trustee*** has any power to act for the sole benefit of PC investors who funded the Alles' loan.

1   No instrument recorded in Riverside County to foreclose ever referred to Freddie Mac, as

2   Trustee acting on behalf of PC Holder beneficiaries—the actual lenders who funded the loan.

3   Even if Freddie Mac **as trustee** were identified it couldn't foreclose as it is under conservatorship.

4   A *conservatee* lacks capacity to sue or defend without expressed consent of the conservator.

5   No evidence was produced to show that FHFA ever consented to a delegation of its power to act.

6   Plaintiff pled plausible facts and claims to enable her FAC to move forward through discovery

7   and proof of verified allegations.  This is not the time to weigh merits.  In reviewing sufficiency

8   of plaintiff's claims, the issue is not whether plaintiff will ultimately prevail, but whether she is

9   entitled to offer evidence to support her claims.  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## DAMAGES WERE ADEQUATELY ALLEGED

10   Plaintiff may recover actual damages under 12 U.S.C.§2605(f)(1)(a) on her declaratory relief

11   claim and under 15 USC §1640 (a)(1) for violations of 12 USC §1641(g) and attorney fees under

12   15 USC §1640(a)(3).   Damages were alleged as common to all claims as recited below: [**¶137**]

13   **137.** *Plaintiff   relied on Defendants misrepresentations and was damaged in the*
     *following ways: (1) Plaintiff has been paying the wrong party for an undetermined*
14   *amount of time and overpaid in interest which was over calculated; (2) she has*
     *suffered damage to her credit; (3) the title to Plaintiff's property has been/is clouded;*
15   *(4) Plaintiff has been threatened and is facing imminent loss of her residence; (5)*
     *Plaintiff has expended funds to cover fees and other related costs; (6) she has suffered*
16   *damage to her reputation in the community; (7) she is unable to determine whether*
     *she sent her monthly mortgage payments to the right party; (8) multiple parties may*
17   *seek to enforce the debt obligation against her on the note she executed; and (9) any*
     *potential buyer of Plaintiff's home will end up in legal limbo, unable to know with any*
18   *certainty whether the buyer can safely purchase Plaintiff's home, get title insurance,*
     *or ever be able to obtain clear title to the property, currently encumbered with a*
19   *multitude of fraudulent, fabricated recorded instruments creating clouds on the title.*
     *Clouds on title render a home unmarketable and blemished forever.*
20
21   Plaintiff referred to "*Damages Common to all claims*" [¶137] in every claim she alleged

22   individually.  Plaintiff alleged specific damages (from the above group) under each of 14 claims.

23   Wells alleged she failed to plead adequate damages, which is a recurring misrepresentation.

24   Generally the requirement to plead damages has been interpreted liberally. *Yulaeva v. Greenpoint*

25   *Mortgage Funding, Inc*., 2009 WL 2880393 at *15 (E.D. Cal. 2009).  While Plaintiff did not list

26   *every* dollar lost allegations are adequate to provide notice and state a claim at the pleading stage.

27
28

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

## II.   STATEMENT OF FACTS

Plaintiff alleged in August 2006 she got a loan from Wells Fargo Bank, NA to buy the home [¶14]; named Wells as beneficiary in a trust deed [¶15]; Wells **pre-sold** her loan to Freddie Mac, in its **corporate** capacity, to be securitized into a pre-established Freddie Mac REMIC trust; and "**On 9/13/2006 certificate holders in a Freddie Mac trust became the beneficial owners**." [¶ 16] Consequently, **Freddie Mac Corporate** is merely a third-party stranger to Alles' loan transaction.

Plaintiff alleged Wells never identified the **<u>true beneficiaries</u>** on her loan; i.e the **<u>certificate holders who funded her loan</u>**.[¶23] Wells failed to verify her debt & amounts purportedly owed. Plaintiff alleged the 12/7/12 assignment of DOT from Wells to Freddie Mac (FAC Exh. C) was fraudulent [¶97, 98] for two reasons.  First, it was executed <u>after</u> a 9/13/06 closing date for the trust, violating NY Trust law, IRS codes & promises it to PC Holders. (FAC Exh.I at pp 38-39):

**Transfer of Mortgages to PC Pool**

The Mortgages in each PC Pool will be identified to that PC Pool. We will hold the Mortgage documents, directly or through a custodian acting as our agent or through the seller or servicer of the Mortgages, for the benefit of the Holders of each related PC Pool, subject to policies and procedures that we may adopt, modify and waive from time to time.                                p.38

Secondly, the purported 12/7/12 assignment was fraudulent because the fabricated instrument was forged by CWRC's robosigner who lacked written authority to act as Wells' <u>attorney-in-fact</u>. Even if the robosigner had authority to assign (she clearly did not) it was nevertheless a fraud as she purported to assign the security to **Freddie Mac Corporate** -- not **Freddie Mac as Trustee** which was a clear violation of NY Trust Law, IRS rules and promises in the PC Offering Circular.

The FAC alleged that CWRC conspired with Wells, not only in this foreclosure, but also in hundreds of others nationwide [¶¶288-292] and to that end hired robosigners to fabricate false instruments <u>without legal authority</u>; accordingly, any loan amount Plaintiff may owe is subject to equitable offset by potential for a jury award of punitive damages against conspiring Defendants.

Only the actual, true beneficiary may execute and record a Substitution of Trustee ('SOT'). Plaintiff alleged the SOT was invalid because it was executed by Wells Fargo Bank, NA, who as a mere sub-servicer had no authority to substitute a trustee. [¶303]   Plaintiff alleged that under California law only the *beneficiary* can appoint a successor trustee---not Wells as servicer [¶303]

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

1    Investors bought fractional interests in notes in the Freddie Mac trust [FAC Exh. I) pp 38-39].

2  Ironically Wells invokes foreclose rights under California's foreclosure scheme [Civil §2924 et.

3  seq.];  yet its Substitution of Trustee recorded on 8/1/12 was invalid under Civil§2934a  because

4  the instrument did not contain the signatures of at least 50% of the actual beneficiaries (lenders):

> Civil Code §2934a.  (a) (1) **The trustee** under a trust deed upon real property or an
> estate for years therein given to secure an obligation to pay money and conferring
> no other duties upon the trustee than those which are incidental to the exercise of the
> power of sale therein conferred, **may be substituted by the recording in the county
> in which the property is located of a <u>substitution executed and acknowledged by</u>**:
>  (A) <u>all of the beneficiaries under the trust deed</u>, or their successors in interest,
> and the substitution shall be effective notwithstanding any contrary provision in any
> trust deed executed on or after January 1, 1968; **or**
> (B) <u>the holders of more than 50 percent of the record beneficial interest of a
> series of notes secured by the same real property or of undivided interests in a
> note secured by real property equivalent to a series transaction</u>, exclusive of any
> notes or interests of a licensed real estate broker that is the issuer or servicer of the
> notes or interests or of any affiliate of that licensed real estate broker.

14    While Plaintiff does not dispute owing money on the loan, she disputes the amount owed and

15  seeks the Court's assistance to determine who holds her Note and Deed of Trust in due course.

16  Plaintiff admits she is not a party or beneficiary of Freddie Mac's PC Agreement with investors,

17  but claims that its failure to securitize her note prevents Wells Fargo or ***Freddie Mac Corporate***

18  from claiming <u>any</u> interest in the mortgage.  Freddie Mac, as trustee may have an interest as the

19  representative of the PC Holders, but that interest can only be enforced by its conservator FHFA.

20  Plaintiff alleged that Defendants have not properly credited payments she made on her mortgage,

21  charged illegal force-placed insurance to her account and have incorrectly calculated interest due.

22    FAC alleges Wells knew Plaintiff was paying incorrect amounts, damaging her credit and

23  rendering her title unmarketable.  Plaintiff seeks "to quiet title against the claims of any and all

24  Defendants, including any unidentified assignee of the security interest. [as DOES]" [¶206].

25  Plaintiff will establish conspiring defendant Cal Western Reconveyance Corporation ["CWRC"]

26  hired a **robosigner** to fabricate a SOT & assignment for Wells Fargo Bank-- a legal impossibility.

27  Only a **natural** person having the capacity to contract may execute a power of attorney.  See

28  Probate Code §4120.  A bank is not a **natural** person.   The fraudulent was assignment a nullity.

## III.        LEGAL STANDARD

A motion to dismiss under FRCP 12(b)(6) challenges the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters U.S.*, 497 F.3d972, 975 (9th Cir. 2007); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).   Material allegations, even if doubtful in fact, are assumed to be true.  *Bell Atl. Corp. v. Twombly,* 550 U.S.544,555 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*     The court should grant 12(b)(6) relief <u>only if</u> the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory.   See  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  The issue is not whether plaintiff will prevail but whether she is entitled to offer evidence to support the asserted claims.  *Scheuer*, supra, 416 U.S.236.

The threshold issue of whether Plaintiff can make any claim related to the failure of Freddie Mac <u>Corporate</u> to convey her note and security interest into the <u>trust res</u> as required by NY law, IRS regulations and Freddie Mac's duty to PC Holders, cannot be dispensed with on pleadings. Plaintiff contends Defendants are not her true creditors and as such have no legal, equitable, or pecuniary right in the debt obligation.  Plaintiff contends her promissory note and DOT were never properly assigned to the Freddie Mac trust because the entities involved in the attempted transfer failed to adhere to the requirements set forth in the Trust Agreement, and thus the note and DOT are not a part of the <u>trust res</u>.   Defendants move to dismiss the FAC in its entirety with prejudice, putting the cart before the horse.  The vital allegation in this case is that assignment of Alles' loan into the Freddie Mac Trust was not completed by September 13, 2006 as required by Freddie Mac's Trust Agreement, IRS rules, and trustee duties to PC Holders.  This allegation gives rise to a plausible inference that the subsequent assignment, substitution, notice of default and election to sell, may be improper and unenforceable.   Defendants failed to address this issue. Defendants intentionally misrepresent authorities in the Ninth Circuit, because they realize recent cases do not support their theories for dismissal, as will be shown in Points & Authorities below. Plaintiff has a due process right to prove recorded instruments are fabricated, forged & fraudulent.

# IV.     LEGAL ARGUMENTS

A.     ALL OF PLAINTIFF'S CLAIMS ARE VALID UNDER CURRENT LAW

## 1.     <u>Declaratory Relief</u>

The foundation of the FAC is a request for the Court to determine the competing rights and obligations of the parties relative to the Property.  28 USCS §2201(a) expressly authorizes a party to bring a cause of action for Declaratory Relief as recited in the statute, "*In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.*"  *Id*

When a declaratory plaintiff has a legitimate expectation of substantial harm from threatened conduct of the declaratory defendant, the case-or-controversy requirement is fully established. For example, if the plaintiff fears allegedly illegal government action, the plaintiff need not actually suffer that action; instead, the legitimate expectation of that action is sufficient, even if the declaratory plaintiff deliberately acts to avoid that action.  See *Steffel v. Thompson,* 415 U.S. 452, 458-460(1974).   Plaintiff need not wait until her home is sold by CWRC to seek relief. If independent non-declaratory claims are present, district court is without discretion to decline to entertain the claim.  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 n. 6 (9th Cir. 1998).

Plaintiff need only allege that an actual controversy exists, she has standing to seek relief, and the controversy is ripe for resolution.   *Burlington Northern R. Co. v. Crow Tribal Council,* 940 F.2d 1239, 12431244 (9th Cir. 1991).  Plaintiff alleged all elements in the FAC. [¶¶141-145]

"A federal court nonetheless maintains a basic obligation to consider the merits and to award relief...[*Snodgrass v. Prov.  Life & Accident Ins. Co*., 147 F.3d 1163, 1166-1167 (9th Cir.1998)] … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)   *Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011)

Moreover, 28 USC §2202 provides for "proper relief based on a declaratory judgment"… after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

14

The Declaratory Judgment Act preserves the right to jury trial when that right already exists. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).  Many actions seeking declaratory relief also request that the court enjoin the opposing party from proceeding in a certain manner. In these situations, a court may retain jurisdiction of the action after rendering a declaratory judgment and may issue an injunction to compel compliance.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) (threatened irreparable injury not required for injunction).

## WELLS ARGUMENTS AGAINST DECLARATORY RELIEF ARE MISPLACED

Wells misrepresents that plaintiff alleged neither Wells nor Freddie Mac has <u>any</u> interest in the loan.  Plaintiff alleged only that servicer **Wells and Freddie Mac <u>Corporate</u>** have no legal, equitable or pecuniary interest in the Alles loan.  Plaintiff never alleged Freddie Mac ***as trustee*** of the trust her loan was to be securitized into has no *equitable* interest.   Plaintiff alleged that Freddie Mac as Trustee could act for PC Holders---the true beneficiaries who funded her loan; however, because  Freddie Mac is under FHFA conservatorship it lacked power to take action. **Only a conservator may act to protect a conservatee**.  FRCP 17(c)(1)(C);  CCP §§372, 389.

Wells cites *Cotati v. Cashman,* 29 Cal.4th 69, 80 (2002) for the proposition that "plaintiff cannot create a cause of action for declaratory relief that does not otherwise exist." [MTD, p. 1] This case is inapposite.  First, it is a *state* court case.  Plaintiff has a federal statutory right to seek declaratory relief under 28 USC §2201.  Secondly, the plaintiff in *Cotati* filed a declaratory relief action and merely referred to causes of action in *another* pending case.  The case is inapposite. Wells cited a California trial court decision just issued on 5/17/2013 in a case filed in pro per. The *Jenkins v. Chase* case is not even final until 30 days expires and will likely be appealed. Wells counsel blatantly misrepresents that plaintiff's arguments have been "*universally rejected by every Court*" citing to *Gomes*---a state case involving an in pro per plaintiff and MERS.

Ninth circuit courts recognize a plaintiff's right to challenge the party foreclosing, regularly deny12(b)(6) motions, and note in their rulings that district and state courts have disagreed with or distinguished *Gomes*.  The *Gomes* court held a plaintiff cannot challenge a nominee [MERS] who is identified as nominee on the trust deed the debtor signed.  In *Johnson v. HSBC Bank* (SD Cal-2012) 11-cv-2091 JM-WVG.  Judge Gallo distinguished *Gomes*, finding the failure to timely assign the note into the securitized trust gives rise to plausible inference of wrongful foreclosure.

**"The vital allegation in this case is the assignment of the loan into the WAMU Trust was not completed by May 30, 2006 as required by the Trust Agreement. This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper**. *Id*

Defendants wholly fail to address that issue…This reason alone is sufficient to deny Defendants' motion with respect to this issue. Moving on, **Defendants' reliance on Gomes is misguided**. In Gomes, the California Court of Appeal held that a plaintiff does not have a right to bring an action to determine a nominee's authorization to proceed with a nonjudicial foreclosure on behalf of a noteholder. 192 CA.4th at 1155. **The nominee in Gomes was MERS**. Id. at 1151. Here, Plaintiff is not seeking such a determination. The role of the nominee is not central to this action as it was in Gomes. Rather, Plaintiff alleges that the transfer of rights to the WAMU Trust is improper, thus Defendants consequently lack the legal right to either collect on the debt or enforce the underlying security interest. *Naranjo v. SBMC* (SD. Cal.-2012) 11-cv-2229-L(WVG)

Defendants argue "[t]he overwhelming authority does not support a cause of action based upon improper securitization." However, the discussion cited in that case centers on plaintiffs who claim that securitization itself violates the agreement between the mortgagor and mortgagee. Plaintiff does not dispute the right to securitize the mortgage, but alleges that as a result of improper procedures, the true owner of his mortgage is unclear. As a result, he has allegedly been paying improper entities an excess amount.*

Ninth Circuit district courts have come to different conclusions when analyzing a plaintiff's right to challenge the securitization process as Plaintiff has here. see *Schafer v. Citi Mortgage*, Inc., 2011 WL 2437267 (C.D. Cal. 2011) (**denying defendants' motion to dismiss declaratory relief claim, which was based on alleged improper transfer due to alleged fraud in signing of documents**); *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016 (E.D. Cal. 2011) (**allowing §17200 claim when plaintiffs alleged that assignment was executed after the closing date of securities pool, "giving rise to a plausible inference that at least some part of the recorded assignment was fabricated"**) But see Armeni v. America's Wholesale Lender,2012 WL 603242 (C.D. Cal. 2012) (dismissing declaratory relief, quasi-contract, UCL, and accounting claims because "plaintiff lack[ed]standing to challenge the process by which his mortgage was (or was not)securitized because he is not a party to the PSA);Junger v.Bank of America N.A.,2012 WL 603262 at *3 (C.D.Cal.2012). **Plaintiff is not categorically excluded from making claims based on allegations surrounding the loan's securitization.**

BOA also argues that Plaintiff makes no showing that the assignment was improper. … the complaint states that MERS had no knowledge of the assignment, that **Treva Moreland was never appointed to "assistant secretary" by the MERS board of directors, and thus there was no authority to make the assignment**. *Johnson, Id.*

While BOA cites no case law on this point, Plaintiff provides persuasive authority to demonstrate that courts have accepted allegations such as his. In *Kingman Holdings, LLC v. CitiMortgage, Inc.*, 2011 WL 1883829 (E.D. Tex. 2011), the court assessed a fraud claim against CitiMortgage in which the plaintiff alleged that MERS' appointment of an assistant secretary ("Blackstun," who later made the assignment) was invalid because it was not approved by the board of directors.

**The court upheld the fraud claim under the 9(b) standard, finding that Plaintiff's allegations were plausible and that if Blackstun had no authority to bind MERS, then MERS filed a fraudulent document after he executed the assignment**.

**Similarly, in <u>Vogan</u>, the court denied defendants' motion to dismiss a § 17200 claim because, as here, the plaintiff pleaded that <u>Wells Fargo recorded a fabricated assignment of the loan because the assignment was executed after the closing date of the mortgage-backed security pool, "giving rise to a plausible inference" of fabrication</u>**.   Id. at *7.  Here, in addition to attacking Treva Moreland's authority, Plaintiff has alleged that the assignment was made after the closing date of the trust, as required by Section 2.1 of the PSA.   *Johnson*, Id

This case most closely resembles the facts in *Naranjo*, *Schafer*, and *Vogan* because Alles also alleged the purported assignment was invalid because it was executed on 12/7/12 (six years after Wells had sold the loan to Freddie Mac on 9/13/2006).   Alles alleged CWRC's robosigner lacked written authority to act as Wells Fargo's "attorney in fact"  Alles allegations give rise to a plausible cause of action for declaratory relief to clear her title as the other district courts held. This case is on *all fours* with *Schafer v. CitiMortage* (CD Cal.2011) CV11-03919 ODW(FFMx):

Here, **Plaintiff has properly alleged that an actual controversy has arisen as to whether Defendants have an interest in the Note and DOT**, and **whether the NOD was sufficient to foreclose on the Property**. Plaintiff argues that because the ADOT and SOT were both signed by Martinez, the **ADOT is fraudulent and no interest was transferred from MERS to Citi; therefore, Citi was not correctly listed as the beneficiary on the NOD and Defendants could not foreclose on the Property**. (FAC ¶¶ 106-08, 116, 139, 183.) Additionally, accepting this allegation as true, Citi would not have an interest to assign or delegate to PennyMac, thus **there is an actual controversy as to whether PennyMac has an interest in the Note or DOT.**

In *Naranjo*, *supra* the court held that plaintiff's claim for declaratory relief is not superfluous and denied defendants' motion to dismiss.   Declaratory Relief is appropriate in this action under the above-cited Central District authority.

17

## 2.   Cancellation of Instrument and Injunction [Civil Code §3412-3422]

Defendants argue it is unclear which documents plaintiff claims cloud her title.  Defendants cite only 2 cases: i.e. *MF. Farming, Co. v. Couch Distributing Co.* 207 CA.4th 180, 200 (2012) and *Hoag v. Howard* 55 Cal.564, 565 (1880). [cited within *MF*].   *MF Farming* concerned a recorded subdivision parcel map and two unrecorded site plans.  MF held only that parcel maps and site plans were not "instruments" as defined by *Hoag* relating to *liens* on a *specific* parcel.

In any case, **MF has not presented any evidence** that the recorded December 1979 **parcel map** concerning subdivision of Couch Distributing's property or either of the two **unrecorded site plans** concerning building additions on Couch Distributing's property was legally void or voidable and, **if not cancelled, threatens plaintiff's title** in Parcel B

*MF Farming* is inapposite to Alles title which relates to *liens* against her *specific* parcel. The argument that Alles did not identify the instruments or how they clouded title is spurious. The FAC identified the instruments whose authenticity is not questioned by defendants.  Such documents may be considered.  *Fecht v. Price Co.*,70 F.3d 1078, 1080 n.1(9th Cir. 1995). Moreover, the court may consider the full text of those documents, even when the FAC quotes only selected portions.  *Id.*  Court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).   In *Suarez v. BONY* (LA) 12-560082 (2013) the court overruled a demurrer finding where plaintiff alleges a trust deed is void cancellation of instruments is a viable claim. Common sense dictates where fraudulent deeds are recorded there must be a cancellation remedy

## 3.   Slander of Title

Defendants repeat the same spurious argument that it is "unclear" which instruments are alleged to be slanderous.  Alles identified exactly what documents slandered her title. [¶161-168] Defendants asked this court to judicially notice (for the third time) the same 5 documents they now argue they "should not be required to search for."  The RJN proves defendants know exactly what documents plaintiff alleged slandered her title.  Defendants argue recording the fabricated, forged and false instruments was *privileged* conduct under Civil Code §2924 and Civil Code §47. The privileges are qualified---not absolute.  *Kachelon v. Markowitz* (2008) 168 C.A. 4th. 316, The court held malicious or false recordings are not privileged and were clearly actionable.  *Id*

18

1   Common sense dictates there is no privilege to record a fabricated, false or fraudulent document.

2   Defendants proclaim "at <u>all</u> relevant times they were 'beneficiaries' " as if it were undisputed.

3   Plaintiff alleged exactly the opposite and her averments must be accepted as true on *this* motion.

4       Defendants argue plaintiff must show pecuniary loss and/or a lost sale caused by the slander.

5   Not true.  Plaintiff alleged she had to hire counsel and file this action to cancel false, fabricated

6   and forged recorded documents and clearly alleged all of the damages caused.  [FAC ¶164, 168]

7   Attorney fees and litigation costs are recoverable as pecuniary damages in slander of title claims.

8   See *Sumner Hill Homeowners v. Rio Mesa Holdings, LLC* (2012) 205 CA.4th at 1030 holding:

**We do not agree that a plaintiff must always show specific harm to vendibility, such as through proof of a lost sale or diminished value.** Rather, we hold that at least in cases such as this one where title was disparaged in a *recorded* instrument, attorney fees and costs necessary to clear title or remove the doubt cast on it by defendant's falsehood are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title. While it is true that an essential element of a cause of action for slander of title is that the plaintiff suffered pecuniary damage as a result of the disparagement of title (*Manhattan Loft, LLC v. Mercury Liquors, Inc*., *supra*, 173 Cal.App.4th at p. 1057), **the law is equally clear that the expense of legal proceedings necessary to remove the doubt cast by the disparagement and to clear title is a recognized form of pecuniary damage in such cases** (*Seeley v. Seymour*, *supra*, 190 Cal.App.3d at p. 865; *Wright v. Rogers*, *supra*, "172 Cal.App.2d at pp. 366-367; Rest.2d Torts, § 633, subd. (1)(b)). fn. 48 Since California law expressly recognizes that attorney fees and costs are a form of pecuniary damages in slander of title cases, it would seem that in the absence of legal authority to the contrary, such damages are presumptively sufficient to satisfy the pecuniary damage element of the cause of action. No cogent authority to the contrary has been brought to our attention.

 **"[A]ttorney fees are permissible as special damages** in slander of title actions because 'the defendant ... by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation.... Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant.'" *Sumner Hill* @ 1032

*Sumner Hill* was recently affirmed in the ninth circuit (ND Cal) in *Barrionuevos v. Chase* C-12-0572 EMC (ND Cal-2012)  distinguishing *Gudger v. Manton* [cited by defendants]:

    In *Gudger v. Manton,* the California Supreme Court held that "a rival claimant of property is conditionally privileged to disparage or justified in disparaging another's property in land by an honest and good-faith assertion of an inconsistent legally protected interest in himself." 21 Cal. 2d 537, 545 (1943). **The *Gudger* Court went on to say that an "express finding of lack of good faith, or of actual malice ... would destroy the privilege or justification here discussed.**" *Id.* at 546.

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

**Plaintiffs allege quite clearly that Defendants published the February 2, 2012, Notice of Trustee's sale with "malice and a reckless disregard for the truth."**

Broadly construing their amended complaint, it would be fair to conclude that Plaintiffs view the remaining three Notices published by Chase and California Reconveyance in a similar light. Thus, on balance, **Plaintiffs have alleged sufficient facts to satisfy this element of the tort at the 12(b)(6) stage. Likewise, Plaintiffs allege with some force the apparent falsity of Defendants' four publications. Finally, the Barrionuevos claim that Defendants' publications "directly impair[ed] the vendibility of Plaintiffs' property on the open market," and caused Plaintiffs to incur costs related to bringing "this action to cancel the instruments casting doubt on Plaintiffs' title," is sufficient to allege the "direct pecuniary loss" element to a slander of title action.** *Id. at ¶¶ 25-26. See also Sumner Hill,* 205 Cal. App. 4th at 1030 **("it is well-established that attorney fees and litigation costs are recoverable as pecuniary damages in slander of title causes of action.").** Accordingly, to the extent Defendants' Motion to Dismiss reaches Plaintiffs' action for slander of title, Plaintiffs have met their burden to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. lqbal.* 129 S. Ct. at 1949   *Barrionuevos*

As shown above, under state and federal law, plaintiff's slander of title claim is viable.

## 4.   Quasi Contract & Unjust Enrichment

Defendants argue quasi-contract & unjust enrichment are not recognized claims.  Not true. Courts are split on the issue.  Ninth circuit courts hold it is a valid claim. see *Naranjo v. SBMC* (SD Cal-2012) No.11-cv-2229-L(WVG).  The *Naranjo* court explains below why it is valid:

**A claim for quasi-contract is synonymous with one for unjust enrichment**. *FDIC v. Dintino* 167 CA.4th 333, 346 (2008).  **Unjust enrichment requires receipt of a benefit and unjust retention of the benefit at the expense of another**. *Peterson v. Cellco Partnr* 164CA.4th 1583, 1593 (2008).  However, "California courts appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy."  Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1099 (N.D. Cal.2007);see Bernardi v. JPMorgan Chase Bank, N.A., No. 11-cv-4212, 2012 WL 2343679, at *3 (N.D. Cal. June 20, 2012) (noting that quasi-contract is not an independent cause of action under California law, and thus the claim is subject to dismissal for that reason alone). It is correct that a plaintiff may not recover on a quasi-contract action if an express agreement exists.  Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., 94 Cal. App. 4th 151, 172 (2001).  However, as Plaintiff points out, **the complaint alleges that there is no valid agreement governing the transaction between Plaintiff and BOA.** *Naranjo*

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

**Thus, if Plaintiff succeeds in showing that BOA was not authorized to collect payment, he may be able to recover based on quasi-contract.** For the same reason, BOA's §1691 argument fails — it does not state why the tender rule should apply if no contract exists. Defendants argue that Plaintiff's quasi-contract claim fails because "[t]he Deed of Trust is an express binding agreement that defines the parties' rights." (Defs.' Mot. 7:8–16.)  Plaintiff responds that she "was not paying her true creditor because there was no valid assignment that allowed [Defendants] to collect on her debt obligation." (Pl.'s Opp'n 19:3–13.)  As discussed above, Plaintiff sufficiently alleges facts that put Defendants' legal rights that derive from the Trust Agreement in question.  Consequently, Plaintiff adequately alleges facts that show Defendants were unjustly enriched in collecting payments based on those presumed rights. *Naranjo*, *Id*

Plaintiff alleged she was paying the wrong party as there was no valid assignment.[FAC ¶137].  Under *Naranjo* plaintiff has a viable cause of action for reimbursement for funds paid to the wrong party who was unjustly enriched and who was a stranger to her contract with Wells.

## 5.    Violation of 15 USC §1641(g)  TILA §131(g)

Defendants argue they are not liable for a TILA §131 violation [15 USC §1641] because Wells sold the loan to Freddie Mac on 9/13/06 3 years before the duty became effective in 2009. CWRC robosigner executed/recorded an *assignment* of DOT from Wells to Freddie Mac 12/7/12.

ASSIGNMENT OF DEED OF TRUST   120256980

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
FEDERAL HOME LOAN MORTGAGE CORPORATION
C/O      3476 STATEVIEW BLVD
        FORT MILL SC 29715

all beneficial interest under that certain deed of trust dated July 28, 2006, executed by CAROLE ALLES, AN UNMARRIED WOMAN AND NANCY DUFFY, AN UNMARRIED WOMAN, trustor, to FIDELITY NATIONAL TITLE INSURANCE COMPANY, trustee, and recorded as Instrument No. 2006-0566295 on August 02, 2006 in book N/A page N/A, of Official Records in the County Recorder's office of RIVERSIDE County, CALIFORNIA describing land therein as

COMPLETELY DESCRIBED IN SAID DEED OF TRUST

and all rights accrued or to accrue under said Deed of Trust.

Dated:    12-5-12

                        WELLS FARGO BANK, N.A. By Cal-Western Reconveyance
                        Corporation as its attorney in fact

                        Monica L. Gonzalez, A.V.P.           ◀ Defendants' RJN Exh. 5, p.38

The 12/7/12 assignment triggered Freddie Mac's duty, as the assignee to notify Alles in writing. Defendants failed to comply.  Defendants argue that only a "sale" triggers a duty to notify debtor. This is patently false and completely misrepresents federal law!  The statute recites as follows:

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

**(g) Notice of new creditor**
**(1) In general**
In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred **or assigned** to a third party, **the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—**
**(A)** the identity, address, telephone number **of the new creditor**;
**(B) the date of transfer**;
**(C)** how to reach an agent or party having authority to act on behalf of the new creditor;
**(D)** the location of the place where transfer of ownership of the debt is recorded; and
**(E) any other relevant information regarding the new creditor**.  15 USC §1641g.

Defendants intentionally failed to comply to conceal the identity of the true beneficiaries; i.e. the PC holders who owned a fractional beneficial interest in each loan.  15 USC §1640 expressly grants standing to a borrower to sue for damages for the assignee's failure to comply:

**(a) <u>Individual</u> or class action for damages; amount of award; factors determining amount of award**
Except as otherwise provided in this section, **<u>any creditor who fails to comply</u>** with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person **<u>is liable to such person in an amount equal to the sum of</u>**—
**(1) <u>any actual damage sustained by such person as a result of the failure</u>;**
**(2) (A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, …**
**(iv)** in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or**…**
 **(3) in the case of any successful action to enforce the foregoing liability or in any action in** which a person is determined to have a right of rescission under section 1635 or 1638 (e)(7) of this title, **the costs of the action, together with a <u>reasonable attorney's fee as determined by the court</u>;**…
**(h) Offset from amount owed to creditor or assignee; rights of defaulting consumer**
A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) of this section against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter.

Ninth circuit courts regular recognize plaintiff's right to bring a claim under 15 USC §1641g.

The court in *Vogan v. Wells Fargo,*WL*5826016,*7*(ED Cal-2011) expressly held assignee liable:

> Further, as Plaintiffs point out, U.S. Bank was assigned the ownership interest in the loan by the January 11, 2011 assignment, meaning that **U.S. Bank is Wells Fargo's purported assignee. MTD, at 2. As an assignee, U.S. Bank falls squarely within 15 U.S.C. § 1641(g),** which creates liability for the assignees of the loan's original creditor if the assignee fails to notify the borrower of the acquisition. 15 U.S.C. § 1641(g).

The court in *Naranjo v. SBMC* (SD Cal. 2012) No. 11-cv-2229-L(WVG) supports the claim.

Defendants also argue that the RESPA claim fails because Plaintiff fails to plead actual damages arising from JPMorgan's alleged failure to respond.  (Defs.' Mot. 10:14–19.)  To state a claim for relief under RESPA, a plaintiff must allege either a purported pattern or practice of violating the statute or actual damages caused by the asserted violation.  12 U.S.C. § 2605(f); *Fonua v. First Allied Funding*, No. C 09-497, 2009 WL816291, at *3 (N.D. Cal. Mar.27,2009). Here, **Plaintiff alleges "actual pecuniary damages" that include costs related to damage to her credit.**  (FAC ¶ 91.)  That is a sufficient allegation of actual damages.  See *Wise v. Wells Fargo Bank, N.A.,*-F.Supp.2d-2012 WL105887 at *6 (C.D.Cal.2012).  *Narajano, Id*

The express language of 15 USC §1641, and California district courts affirm a right to this claim.

## 6.  QUIET TITLE  (<u>TENDER IS NOT REQUIRED UNDER NINTH CIRCUIT CASES</u>)

As shown above plaintiff has a viable claim for cancellation of fraudulent instruments under Civil Code §3412-3422 and a claim for slander of title for violations of Penal §§532f (a)(4); §115 Defendants <u>misrepresent</u> that plaintiff is required to tender the full amount due to quiet title. First, the cases defendants cite all involved actions to quiet title <u>after</u> a trustee had <u>sold</u> the home. This makes sense because a third party has already purchased the property by paying off the loan. THIS IS NOT THE CASE HERE.  THE TRUSTEE HAS NOT SOLD THE HOME AT ALL. District and state courts regularly decline to require tender in preemptive challenges to the sale.

**<u>Tender is not required when the action attacks validity of the underlying debt because the tender would constitute an affirmation of the debt</u>**. *Lona v. Citibank, N.A.,*WL 6391584, *14..l6 (CA 6-2011) (identifying 4 exceptions to tender); *Sacchi*, No. CV *11-1658* AIM, 2011 WL 2533029, at *9..10 *(citing Onofrio v. Rice, 55* Cal. App. 4th 413, 424 (1997)); *Stockton v. Newman,* 148 CA 2d 558, 564 (1957); *Vogan v. Wells Fargo*  2:11-CV-11 02098-JAM-KIN

2011 WL 5826016, *7..8 (E.D.Cal-2011) (the Court holds  that the tender requirement does not apply to this case because Plaintiffs are challenging the beneficial interest held by U.S. Bank in the deed of trust, not the procedural sufficiency of the foreclosure itself."); *Foulkrod v. Wells Fargo Financial California Inc.,* CV 1 1-732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("...requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.").

   **In recognizing exceptions to the tender rule, *Sacchi* court articulated inherent unfairness in requiring a homeowner challenging the underlying debt to tender the full amount due:**

> Defendants present this tender argument as though it were absolute and without exception. Such a rule, if it existed, would in many instances eliminate any possibility of challenging wrongful foreclosures. Most homeowners, even those who are not in default, do not have ready access to the funds necessary to pay off the balance of their mortgages.  Thus, if a home is about to be taken away through error or malfeasance, a homeowner would be unable to hold onto his most precious possession. **<u>This would be a grossly inequitable result and would permit entities to foreclose on properties with impunity</u>**. *Sacchi,* @ 9

Here, Plaintiff Alles alleges just such malfeasance.  [FAC ¶23, 49, 54, 58 and throughout FAC ]

   The court in *Vogan,* recognizing that requiring tender would be inappropriate in just such a case as this, explained, "Plaintiffs are not saying that U.S. Bank failed to follow the letter of California's statutory foreclosure law; they are claiming that U.S. Bank did not have standing to foreclose in the first place. Thus, relying on *Onofrio,* requiring Plaintiffs to tender the full amount of the indebtedness to an entity, U.S. Bank, that is allegedly not the beneficiary to the deed of trust in order to protect Plaintiffs' interest in the Property would be inequitable." 2011 WL 5826016, at *7 *(citing Onofrio, 55* CA.4th 413).  Plaintiff is therefore not required to tender.

## 7.   B&P §17200   [UNFAIR, UNLAWFUL BUSINESS PRACTICES]

   First, Defendants argue the court dismissed plaintiff's B&P §1700 claim in the complaint and therefore plaintiff should not have re-alleged the claim.  First, the court cited the *Mitsubishi* case (about a TV-not foreclosure).  The court found "lack of standing" because plaintiff kept the TV set so "he got the benefit of his bargain."  The court cited *Hardwood v. BOA*, 2:10-cv-02450-GEB-KJM, 2010 WL 5287539 at*3---dismissal <u>without prejudice,</u> authorizing plaintiff to amend.

The *Hardwood* court dismissed it because plaintiffs did not address "standing" in its opposition. The court <u>authorized an amended complaint</u> holding the following:

> **B.   Business & Professions Code § 17200**
>
> Defendant argues Plaintiffs' California Business and Professions Code section 17200 ("§ 17200") claim should be dismissed because "Plaintiffs lack standing, and Plaintiffs fail to allege a predicate wrong." (Mot. 6:5-6.) Plaintiffs counter that Defendant's "sophisticated loan scheme" is an "unfair" business practice that "lead[s] to the grave consequence[] [of] Plaintiff[s] losing [their] home." (Opp'n 7:10-15.) Plaintiffs do not address Defendant's standing argument in their Opposition.

◀ <u>Standing</u> not addressed

Since this court dismissed Alles' B&P §17200 claim, <u>without prejudice and authorized an amendment</u>, after citing the above two cases, it can be inferred that *this* court believed Alles had not sufficiently alleged "standing" i.e. that she needed to include additional allegations in the FAC describing exactly how she was injured or suffered damages.  Plaintiff' counsel read all of the cases cited by the court, and completed extensive research to make sure the allegations in the FAC satisfied the standards *this* court set.   Counsel located 7 ninth circuit cases where the court dismissed 12(b)(6) motions challenging B&P §17200 claims on the <u>same</u> allegations in the FAC:

1) *Vogan v. Wells Fargo Bank* 2011 WL 5826016 at *6-7 [u**pholding § 17200 claim because court had also upheld claim under Truth in Lending Act, <u>15 U.S.C. §1641(g).</u>]** [FAC ¶188]

2) *Naranjo v. SBMC* (So. Dist. Cal.-2012) No. 11-cv-2229-L(WVG) [**wrong party foreclosing**]

3) *Johnson v. HSBC Bank* (SD Cal-2012) #3:11-cv-2091-JM-WVG  [**wrong party foreclosing]**

4) *Barrionuevos v. Chase*, C-12-0572 EMC (ND Cal-2012);[<u>MTD denied on all claims; **UCL**</u>]

5) *Clemens v. Chase* No. C-09-3365 EMC, 2009 WL 4507742, at *7 (N.D.Cal-2009) [**UCL**]

6) *Sullivan v. WAMU,* C-09-2161 EMC, 2009 Lexis104074, at *13 (N.D.Cal-2009) [**UCL**]

7) *Sacchi v. MERS,*11-cv-1658 AHM,WL2533029, *8-9 (CD Cal-2011) [**UCL-viol.Civ§2923.5**]

FAC alleged damages from unfair, unlawful and fraudulent business practices [FAC ¶137,212] Secondly the FAC alleges entirely new claims, some of which arose after Jan, 1, 2013 when the new HBOR became effective.  [Original complaint filed 11/29/12 before HBOR was effective.]

Citing *Naranjo* the court in *Johnson v. HSBC Bank* (SD Cal-2012) 3:11-cv-2091-JM-WVG held:

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice .."B&P §17200. **This claim is generally derivative of some other illegal conduct or fraud committed by a defendant**. *Khoury v. Macy's of Cal.,Inc*.,14 CA 4th 612, 619 (1993)...Defendants argue that Plaintiff's allegation regarding a cloud on her title does not constitute an allegation of loss of money or property, and even if Plaintiff were to lose her property, she cannot show it was a result of Defendants' actions... **The Court disagrees**. As discussed above, Plaintiff alleges damages resulting from Defendants' collection of payments that they purportedly did not have the legal right to collect. These injuries are monetary, but also may result in the loss of Plaintiff's property. Furthermore, these injuries are causally connected to Defendants' conduct. Thus, **Plaintiff has standing to pursue a UCL claim against Defendants**. ). *Naranjo v. SBMC* (So. Dist. Cal.-2012) Case No. 11-cv-2229-L(WVG)

...Defendants argue that Plaintiff fails to plead an unlawful, fraudulent, and unfair act. ...Plaintiff alleges cognizable theories of liability, including, among others, violations of the FDCPA and RESPA. Thus, Plaintiff may proceed with her UCL claim under the unlawful prong

As discussed above, **a fundamental issue in this action is whether Defendants' rights were properly assigned in accordance with the Trust Agreement in 2006. Plaintiff alleges facts that allows the Court to draw a reasonable inference that Defendants maybe liable for various misconduct alleged**. See Iqbal,129 S. Ct. at 1949 **Plaintiff alleges that BOA has engaged in unfair, unlawful, and fraudulent business practices by executing misleading documents, executing documents without proper authority to do so, and demanding payments for non-existent debt, among other things.** BOA concedes that violation of another law serves as a predicate for stating a cause of action under § 17200, but states that "Plaintiff must plead facts to support the underlying statutory violation."... **Because the court has upheld Plaintiff's other claims, the § 17200 claim must be upheld under the unlawful prong**. See, e.g., *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016 at *6-7 (upholding § 17200 claim because court had also upheld claim under Truth in Lending Act, 15 U.S.C. §1641(g). *Johnson v. HSBC Bank, et al* (SD Cal-2012) No.3:11-cv-2091-JM-WVG

**The *Barrionuevos v. Chase*, C-12-0572 EMC (ND Cal-2012) court denied a MTD, holding:**

Defendants challenge the § 17200 claim on the basis that "a violation [of Cal Civ. Code § 2923.5] does not impact plaintiffs with an **actual loss of money or property to give standing under Cal. B&P §17200**."...However, **"[i]t is undisputed that foreclosure proceedings were initiated which put [the Barrionuevos] interest in the property in jeopardy, this fact is sufficient to establish standing as this Court has previously held.**"*Clemens v. J.P. Morgan Chase* C-09-3365 EMC, 2009 WL 4507742, at *7 (N.D.

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

Cal. Dec. 1, 2009) (citing *Sullivan v. Washington Mut. Bank, FA,* No. C-09-2161 EMC, 2009 U.S. Dist. LEXIS 104074, at *13 (N.D. Cal. Oct 23, 2009). *See also Sacchi,* 2011 WL 2533029 at *8-9 (refusing to dismiss under FRCP 12(b)(6) plaintiffs section 17200 claim, in part, because plaintiff alleged a violation of Cal Civ. Code § 2923.5).

Second, Defendants repeat their argument that Plaintiffs have "failed to allege facts sufficient to demonstrate that defendants violated Section 2923.5" Defs.' Mot. to Dismiss at 9-10. "A plaintiff alleging unfair business practices under [17200] must state with reasonable particularitythe facts supporting the statutory elements of the violation." *Khoury v. Maly's of California. Inc.,* 14 Cal. ADD. 4th 612, 619 (1993). As a derivative claim based upon defendants' alleged failure to comply with Cal Civ. Code § 2923.5, the Barrionuevos' § 17200 claim rises and falls along with that underlying cause of action. Having already determined that Plaintiffs' § 2923.5 claim was pled with enough specificity and factual support to withstand Defendant's motion to dismiss, the Court finds Plaintiffs' §17200 claim is likewise sufficiently pled under Rule 12(b)(6).

**The *Barrionuevos v. Chase* court held violation of Civil §2923.5 was an unfair practice**:

…Plaintiffs asserts claims under § 17200 for Chase and **California Reconveyance's violation of Cal Civ. Code § 2923.5, and openly acknowledge that their § 17200 claim "is a derivative cause of action."** Pls.' Response Brief at 7. They also acknowledge that **"plaintiffs' ability to pursue this cause of action depends on the success or failure of their substantive causes of action**." Id. …see also *Sacchi,* 2011 WL 2533029 at *8-9 (**refusing to dismiss under FRCP 12(b)(6) plaintiffs section 17200 claim, in part, because plaintiff alleged a violation of Cal Civ. Code § 2923.5).** ….As a derivative claim based upon defendants' alleged failure to comply with Cal Civ. Code§2923.5, the Barrionuevos' § 17200 claim rises and falls along with that underlying cause of action. Having already determined that Plaintiffs' § 2923.5 claim was pled with enough specificity and factual support to withstand Defendant's motion to dismiss, the Court finds Plaintiffs' §17200 claim is likewise sufficiently pled under Rule 12(b)(6).

Applying the authority of 7 district courts in California the UCL claim is derivative of claims for violations of other statutes which plaintiff alleged; i.e. 15 USC §1541(g); Civil §2923.5 & her claims for fraud and cancellation of fraudulent instruments. To state a claim under the fraudulent business practice prong plaintiff need only demonstrate that "members of the public are likely to be deceived." *Bank of the West v. Sup. Ct.* 2 Cal.4th 1254, 1267 (1992) *citing* to *Chern v. Bank ofAmerica,* 15 Cal.3d 866, 876 (1976). Fabricating false and fraudulent instruments, executed without any legal authority to do so, is an unfair, unlawful and fraudulent business practice which is likely to deceive the public.  Foreclosing on fraudulent instruments is actual, ongoing fraud.

**8.** **Breach of Contract**

A party alleging breach of contract must establish (1) the existence of a contract, (2) the complaining party's own performance or excuse for nonperformance, (3) the other party's breach, and (4) resulting damages suffered by the complaining party. *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821(2011).   Defendants argue that although plaintiff references her note and trust deed she does not specifically *identify* it as a contract.  This is an absurd argument for two reasons.  First, in challenging plaintiff's claim for equitable relief under a theory of quasi-contract defendants argued, "*However, it is well settled that there is no equitable basis for a quasi-contract when the parties have an actual agreement. (Id.) In the present matter, since the Note and Deed of Trust expressly set forth all of the obligations of the parties, there is no equitable basis for the remedy of quasi-contract*" (MTD, 7:24-26;8:1-3]  **Defendants can't have it both ways!**  They cannot argue that equitable relief under quasi-contract fails because *there is a contract* [pointing to the note and trust deed as "the contract"] and then simultaneously argue that plaintiff's breach of contract claims fails because she failed to identify an actual contract!!!

Secondly, plaintiff specifically identified her note & trust deed as the contract. [FAC ¶227] Plaintiff specifically alleged how defendants breached the contract; i.e. by altering its basic terms and characteristics without her consent, citing authorities supporting the theory. [FAC ¶229-236] Defendants argue plaintiff did not plead performance.  Not true.  [FAC ¶237]  Defendants argue the claim is barred by the 4-year statute of limitations.  Not true.  Plaintiff alleged any statute of limitations is tolled by the discovery  [FAC ¶13, 266]  At ¶13 plaintiff alleged that defendants' intentional, knowing and fraudulent concealment of the true facts tolls any statute of limitations, and expressly recited that defendants concealed facts when under a duty to disclose under TILA, 15 USC §1641(g) (assignee's duty to notify debtor of new obligee) and under the new HBOR.

Defendants reassert the ridiculous argument that the note contains a clause which recites that the note "*can be sold one or more times without prior notice to Borrower.*"  It is true that a note can be sold to a beneficiary pursuant to a valid assignment.   However, this is not what happened.  The note was not sold to a "new beneficiary."  The note was transmuted into an entirely different structure because it was "securitized" into a pool of  "Mortgage Backed Securities."

1       This altered the basic terms and characteristics of the contract without plaintiff's consent.

2   This can logically be compared to a consumer buying a "5-year service contract" on the purchase

3   of a new *Porshe* for $1,500 in which the dealer agreed to make any repairs for that 5-year period.

4   The contract recites dealer could sell/assign the service contract without consumer's consent.

5   The dealer then sells/assigns consumer's service contract to a *Porshe/Volkwagon* repair shop.

6   Two years later, consumer delivers the *Porshe* to the assignee repair shop for minor engine repair

7   covered under his service contract.  Consumer picks up his *Porshe* and discovers the shop had

8   removed his *Porshe* engine & replaced it with a *Volkswagon* engine. Repairer made secret profits

9   by selling consumer's *Porshe* engine to a *Porshe* engine wholesaler.  Consumer argued dealer

10  breached the service contract because he altered the basic terms and characteristics by assigning

11  the service contract to another repair shop who completed the repair without charging consumer

12  but transferred engines without the owner's consent, making undisclosed profits in the process.

13  Consumer argued original dealer failed to disclose that his service contract could be sold to some

14  other vendor who would alter its basic terms and thereby diminish marketability of his *Porshe*.

15  The car works and the repair was free; but the *Porshe* has a diminished value in the marketplace.

16      Alles alleged no person ever disclosed that her loan had been *pre-sold* during escrow and

17  Wells would make undisclosed secret profits on the sale, violating a duty to disclose under TILA.

18  No one ever told Alles in securitization her debt obligation was transmuted into securities bonds

19  and some corporate manager at Freddie Mac (a complete stranger to her contract) would impose

20  new impairments on her note and trust deed without her consent altering its basic characteristics.

21  This was clearly a breach of contract which occurred long before she stopped making payments

22  to an entity who no longer was the beneficiary, and had not been beneficiary for over six years.

23  Alles has no idea if her payments were properly credited against her loan, or were deposited into

24  some account where they were used for purposes other than as credits toward her debt obligation.

25      Under mandatory authority defendants breached her contract by altering the basic terms and

26  characteristics without consent.  *Hawkins v. United States*, 96 U.S. 689 (1877);   *Wheeler v.*

27  *New Brunswick Co*.,115 U.S.29(1885);  *Whiteside v. United Stats*, 93 U.S.247 (1876);  *Riverside*

28  *Rancho Corp. v. Cowan*, 88 CA.2d 197 (1948).  *Carlson, et al v. Baldacci* (1967) 257 CA.2d 212

Defendants misrepresent that Alles did not plead damages.  FAC ¶137 pled *common* damages:

137. Plaintiff   relied on Defendants misrepresentations and was damaged in the following ways: (1) Plaintiff has been **paying the wrong party** for an undetermined amount of time and **overpaid in interest which was over calculated**; (2) she has suffered **damage to her credit**;(3) the **title to Plaintiff's property has been/is clouded**; (4) Plaintiff has been threatened and is facing <u>imminent loss of her residence</u>; (5) Plaintiff has expended <u>funds to cover fees and other related costs</u>; (6) she has suffered <u>damage to her reputation</u> in the community; (7) she is unable to determine whether she sent her monthly mortgage payments to the right party; (8) multiple parties may seek to enforce the debt obligation against her on the note she executed; and (9) any potential buyer of Plaintiff's home will end up in legal limbo, unable to know with any certainty whether the buyer can safely purchase Plaintiff's home, get title insurance, or ever be able to obtain clear title to the property, **currently encumbered with a multitude of fraudulent, fabricated recorded instruments creating clouds on the title**. **Clouds on title render a home unmarketable and blemished forever.**          FAC ¶137

Plaintiff's note & DOT recited an attorney fee clause—recoverable under Civil §1717.

Allegations that a servicer told a borrower to withhold mortgage payments and withholding would not result in foreclosure are state law claims not preempted by HOLA. *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376 at *6 (N.D. Cal. Jan. 26, 2011).  Oral representations made by agents or employees of a servicer or lender pertaining to a DOT(as opposed to the promissory note) may give rise to a valid breach of contract claim.   *Id*

**9.**    **Violation-Civil §2923.5 Unlawful Pre-Foreclosure Acts**

Defendant argues the court should dismiss §2923.5 claim because alleged violations occurred prior to HBOR's effective date, which <u>added</u> enhanced remedies for those violations, such as injunction under Civil §2923.12.   Just because HBOR's enhanced remedies are not retroactive does not mean plaintiff has no claim for violations under the pre-HBOR version of §2923.5.  See *Mabry v. Superior Court* (2010) 185 CA.4th 208---- the leading case on §2923.5.   Under *Mabry* the NOD that CWRC recorded on 8/2/12 was invalid until defendants can prove compliance with §2923.5 (*Perata Mortgage Relief Act*). *Mabry* applies here.  Where verified allegations (accepted as true on this motion) state that Alles was not contacted 30-days before the NOD was recorded, to discuss alternatives, a hearing must occur to find who is telling the truth (Alles or a *robosigner* whose photo-shopped "signature stamp" appears on the purported "affidavit of compliance.")

In *Mabry*, at page 214 the court answered the following questions as to plaintiff's rights:

(1) (A) **May section 2923.5 be enforced by a private right of action**? **Yes.** **Otherwise the statute would be a dead letter.**

(B) Must a borrower tender the full amount of the mortgage indebtedness due as a prerequisite to bringing an action under section 2923.5? No. To hold otherwise would defeat the purpose of the statute.

(C) **Is section 2923.5 preempted by federal law?** **No**

In *Wise v. Wells Fargo* (CD Cal-2011) cv-11-8586 CBM, which cited and agreed with *Mabry*, Judge Consuela Marshall expressly found a private cause of action exists under Civil §2923.5:

Ninth Circuit has stated that a private right of action does exist under Section 2923.5 so long as there hasn't yet been a foreclosure sale. *Martinez v. America's Wholesale Lender* 446  Fed.A ppx. 940, 943 (9th Cir.2011)

In *Barrionuevo v. Chase* (ND Cal 2012) C-12-0572–EMC the court held a §2923.5 claim valid:

**When a plaintiff's allegations dispute the validity of defendants' declaration of compliance in a Notice of Default as here, the plaintiff has "plead 'enough facts to state a claim to relief that is plausible on its face.'** *Cousins.* 568 F.3d at 1067 (9th Cir.2009). *See Argueta.* 787 F. Supp. 2d at 1107;  *Caravantes v. California Reconveyance Co.* OCV1407. 2010-WL4055560 (S.D.Cal.Oct.14,2010) **Accordingly, Plaintiffs allegations of non-compliance are sufficient to defeat a motion to dismiss.**

Whether Freddie Mac (purported "lender" and "beneficiary) and/or Wells Fargo (purported "servicer") complied with Civil §2923.5 is an issue of fact not resolvable on a 12(b)(6) motion. *Skov v. US Bank,* 207 CA. 4th 690 (2012)

**FEDERAL LAW DOES NOT PREEMPT COMPLIANCE WITH CIVIL CODE §2923.5**

Defendants next argue that Civil §2923.5 is "preempted by the National Banking Law." This argument fails for two reasons.  First, this law only applies to National Banks.  Wells is a National Bank.  However, the entity which was required to comply with §2923.5 is Freddie Mac, as the purported "owner" of the Alles loan.   Wells admitted in its answer that it sold the loan to Freddie Mac on 9/13/06.  **Freddie Mac is not a bank or a lender** or a beneficiary on Alles loan. Freddie Mac is a private Corporation of stockholders (an "enterprise" created by the government) Accordingly, it is not eligible to invoke preemption under the National Bank Act for BANKS!

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

Even if Freddie Mac were a National Bank (it clearly is not) preemption would not apply, for the following reasons which also apply to any attempt by Wells to try to invoke preemption. Federal district courts disagree as to whether the National Bank Act (NBA) preempts HBOR. Defendants cited only the few courts who have held HBOR is preempted by the NBA.  That was not really fair to the court because it does not help this court's analysis to review only one side. Many district courts have held the NBA does <u>not</u> preempt HBOR, including Civil Code §2923.5. *Osorio v. Wells Fargo Bank,* 2012 WL1909335 (N.D.Cal-2012); *Pey v. Wachovia Mtg*, 2011 WL 5573894 (N.D. Cal-2011); *Shaterian v. Wells Fargo Bank*, 2011 WL 2314151 (N.D. Cal.-2010) The courts who held preemption applied were probably not presented with a thorough analysis.

When properly analyzed under NBA preemption scheme, §2923.5 is not preempted because it falls squarely within the Office of Comptroller of Currency (OCC) regulation's savings clause which preserves state foreclosure laws.  Wells urges the Court to analyze preemption of §2923.5 under the <u>Home Owners Loan Act</u> (HOLA) and Office of Thrift Supervision (OTS) regulations. This analysis is wrong: Wells only grounds for preemption is the National Banking Act (NBA).

Preemption of state law by national banks is analyzed under the OCC conflict preemption standards set forth in the NBA. *Aguayo v. U.S. Bank, N.A.*, 653 F.3d 912, 921-22 (9th Cir. 2011). Here,  Alles' loan was originated by Wells Fargo Bank, NA.  Wells sold the loan to Freddie Mac. Who originated the loan is irrelevant.  Preemption only applies to the entity who is foreclosing. In *Gerber v. Wells Fargo Bank, N.A.*,2012 WL 413997, at *4 (D. Ariz-2012) the court criticized supporting a claim that a subsequent lender/assignee can rely upon the originating lender's status as a National Bank to bestow HOLA preemption because the "cases cite either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire." *Gerber*, at *4.  As that court noted, "**preemption is not some sort of asset that can be bargained, sold, or transferred**." Id.; see also *Albizo v. Wachovia Mortg.*, 2012 WL 1413996, at *15 (E.D. Cal.-2012)

Here, failure to comply with §2923.5 is attributable solely to Freddie Mac foreclosure actions and has nothing to do with the origination activity of Wells Fargo Bank, Na.  *Gerber v. Wells Fargo Bank, N.A*, supra.

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

Even if Wells Fargo were correct---that the preemption analysis applicable to national banks applies here, its reliance on the HOLA preemption standard is misplaced because Congress amended HOLA in 2011 as a part of the Dodd-Frank Wall Street Reform & Consumer Protection Act to conform HOLA preemption standards to the NBA conflict preemption standard.   See 12 U.S.C. § 1465(a) (2012) ["Any determination by a court . . . regarding the relation of State law to [federal savings associations] shall be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of State law.")].

For a state law to be preempted under OCC regulations of NBA, it would have to be listed in the express preemption clause and be absent from the savings clause. *Aguayo,* supra, 653 F.3d at 922.   Civil §2923.5 escapes preemption under each rubric: it is not expressly preempted and it is included in the savings clause.  *Albizo v. Wachovia Mtg,* 2012 WL 1413996, at *15 (E.D. Cal-2012) (**HOLA is not a privilege that can "trickle[...] down" to a loan's successor in interest**).

Wells Fargo's argument that §2923.5 regulates the "servicing" and "processing" of loans relies on an overly broad construction of "servicing" and "processing" that is untethered to lending, the focus of the OCC regulation.  To interpret "servicing" to include foreclosure, as Wells Fargo argues, would result in the preemption of <u>every</u> state law regarding foreclosure.  *Gerber*, supra 2012 WL 413997, at *8 ("'[S]ervicing' does not include 'foreclosure,' and state laws regulating foreclosure are therefore not preempted by NBA . . . .").  Civil §2923.5 requires a mortgagee to contact the borrower 30-days before recording an NOD.  Nor does §2923.5 require "disclosures" because notices that relate to debt collection upon default of an existing loan are not disclosures within the meaning of the regulation. See *Epps v. JP Morgan Chase Bank, N.A*., 675 F.3d 315, 325 (4th Cir. 2012).  <u>**NBA only preempts state laws requiring disclosures at loan origination.**</u> *OCC Interpretive Letter* No. 1005, 2004 WL 3465750 (June 10, 2004).

The issue here is not disclosure, subject  to HOLA, but rather the purported lender to contact the borrower before recording an NOD.  <u>Pre-foreclosure requirements</u> are not lending disclosures preempted by the NBA.  Indeed, except for two courts that incorrectly applied HOLA preemption analysis in the context of the NBA, <u>every court that has analyzed whether California foreclosure laws, including Civil Code §2923.5, are preempted under NBA have held they are not preempted.</u> See *Cabrera v. Countrywide Home Loans, Inc.*, 2013 WL 1345083 (N.D. Cal. Apr. 2, 2013);

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

*Tamburri v. Suntrust Mortg., Inc*., 875 F. Supp. 2d 1009 (N.D. Cal. 2012); *Skov v. U.S. Bank Nat'l Ass'n*, 207 CA.4th 690 (2012).   But see Maynard v. Wells Fargo Bank, N.A., 2012 WL 4898021 (S.D. Cal.-2012) (<u>misapplying HOLA analysis to find preemption</u>); *Acosta v. Wells Fargo Bank, N.A.*, 2010 WL 2077209 (N.D. Cal. May-2010) (same)

### Civil Code §2923.5 Falls Under OCC Regulation's Savings Clause

Even if Civil §2923.5 regulated "servicing," "processing," or "disclosures,"(it does not) the regulation's savings clause would still "save" it from preemption.   Foreclosure is nothing more than a debt collection process.  The fact that the Homeowner Bill of Rights HBOR provides for additional post-sale remedies for servicer violations does nothing to change this analysis. *Lopez v. WAMU*, 284 F.3d 990 (9th Cir. 2002) (<u>finding the imposition of a damage remedy does nothing to interfere with the mortgagee's ability to conduct lending activities under HOLA</u>).

It follows, then, that since §2923.5 regulates procedures before a notice of default or foreclosure sale, this law undoubtedly regulates creditors' "rights to collect debt" within the meaning of the OCC's savings clause. 12 C.F.R. § 34.4(b)(5) (2011).  **Civil  §2923.5 is therefore "saved" and not preempted**. *Gerber*, *supra* *5 ("**There has never been a federal presence . . . sufficient to displace the various types of state statutes governing foreclosure procedures**.").

Another requirement within § 34.4(b)'s savings clause is that the state law not "significantly interfere" with the national banks' powers under the NBA.  Nothing in Civil §2923.5 requires Wells Fargo to offer a loan modification or to change its lending or servicing practices. It simply requires a mortgagee to delay the foreclosure process until they have contacted the borrower to discuss alternatives to foreclosure 30 days before recording an NOD.

Wells' argues that any substantive mandate imposed by state foreclosure law is preempted. **But Wells cannot have it both ways**.  Wells cannot rely on California's non-judicial foreclosure statutes as authorization to sell the Alles home, yet argue that the homeowner's claims under the same regime are preempted.  See *Dan's City Used Cars, Inc. v. Pelkey*, __ S. Ct. __, 2013 WL 1942398, at *9 (**May 13, 2013**) (A towing company "cannot rely on New Hampshire's regulatory framework as authorization to sell *Pelkey's* car, yet argue *Pelkey's* claims invoking the same state-law regime, are preempted.  *Aguayo, supra*  353 F.3d *925. <u>The severe inequity is obvious.</u>

### This Court Must Predict What the 9th Circuit Court of Appeal Would Do

Because there is a conflict between district courts on whether Civil §2923.5 is preempted by the NBA, the court must predict how the ninth circuit court of appeals would decide this issue. Plaintiff believes the ninth circuit would resolve this conflict by following the United States' rationale in *Pelkey*, supra which was just published on May 13, 2013. Although *Pelkey* involves a vehicle instead of a home the analysis is the same. In *Pelkey*, the high court held:

> **Pelkey's claims, Dan's City maintains, are "related to" the towing service it rendered because selling Pelkey's car was the means by which Dan's City obtained payment for the tow**. But if such state-law claims are preempted, no law would govern resolution of a non-contract-based dispute arising from a towing company's disposal of a vehicle previously towed or afford a remedy for wrongful disposal. Federal law does not speak to these issues. [6]**Thus, not only would the preemption urged by Dan's City leave vehicle owners without any recourse for damages, it would eliminate the sole legal authorization for a towing company's disposal of stored vehicles that go unclaimed. <u>No such design can be attributed to a rational Congress</u>**. See Silkwood v. Kerr-McGee Corp., 464 U. S. 238, 251 (1984) ("**<u>It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct</u>**.").
>
> **<u>In sum, Dan's City cannot have it both ways</u>. It cannot rely on New Hampshire's regulatory framework as authorization for the sale of Pelkey's car, yet argue that Pelkey's claims, invoking the same state-law regime, are preempted**.
> New Hampshire's legislation on abandoned vehicles gave rise to Pelkey's debt and **established the conditions under which Dan's City could collect on that debt by selling Pelkey's Honda**. See N. H. Rev. Stat. Ann. §§262:33, 262:36–a, 262:40–a; supra, at 3–5. **Pelkey's claims**, attacking Dan's City's conduct in disposing of the vehicle, **rest on the very same provisions**. See Brief for Petitioner 41 ("**All of the alleged wrongful conduct of Dan's City was part of the state sanctioned and regulated process for disposing of abandoned vehicles under Ch. 262**.").

The Ninth Circuit Court of Appeals would probably apply the same rationale as the Supreme Court in *Pelkey*. A bank or lender cannot rely on California's regulatory foreclosure framework as authorization to sell the Alles home, yet argue that Alles' claims, invoking the same state-law regime are preempted. No such design can be attributed to a rational Congress or Judicial Officer. Following the Supreme Court's rationale in *Pelkey* the court should deny dismissal of this claim.

**10.    Civil Conspiracy-Defraud, violate codes & Due Process**

Defendants argue to establish liability for conspiracy facts must show something was done, which, without conspiracy, would give rise to a cause of action citing *Manor Investment Co. v. F. Woolworth Co*. 159 CA.3d. 586, 595 (1984);"The *sine qua non* of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." *Schickv. Bach* 193 CA.3d 1321,1328 (1987).  The argument is circular because that is exactly what plaintiff alleged!  [FAC ¶254-263 and ¶49-50]  Plaintiff included §22.14 of the Freddie Mac Seller/Servicer in ¶49 proving Wells Fargo conspired with Freddie Mac to sell the loan but withhold recording the assignment at the Riverside county recorder's office, and to withhold that information from plaintiff, who did not discover it until she hired counsel after a Notice of Default was recorded on 8/2/12.

Under TILA defendants were required to disclose all commissions and benefits they were to receive in escrow.   Wells Fargo continued as servicer of the loan for six years but never told plaintiff about its sale to Freddie Mac at any time during the six year period until foreclosure.

Defendants argue plaintiff failed to allege damages.  This is not true.  Plaintiff alleged her damages under conspiracy claim at FAC ¶362.  [she had to hire counsel to prevent foreclosure]. Attorney fees are a component of damages.  *Sumner Hill Homeowners v. Rio Mesa Holdings, LLC* (2012) 205 CA.4th at 1030; *Barrionuevos v. Chase*  C-12-0572 EMC (ND Cal-2012). Plaintiff alleged Freddie Mac, CWRC and Wells all knew that Wells had no beneficial interest in the loan on 8/1/12 when CWRC's robosigner fabricated a false Substitution of Trustee creating a pretext that Wells was still the beneficiary without ever identifying Freddie Mac.  All three of the defendants maintained the charade until they were notified that Plaintiff had sued.

Defendants never disclosed Freddie Mac's purchase of CDO swap insurance which paid off defaulted loans or that the Treasury infused $190 billion to bail out Freddie Mac and Fannie Mae. The balance of Alles' loan may have been paid off by insurers and that Wells & Freddie Mac had planned to convert the trustee sale proceeds to Freddie Mac Corporate for its shareholders instead of for the benefit of the PC investors.  The belated assignment CWRC recorded on 11/19/12 as purported attorney-in-fact for Wells recited the security was conveyed to Freddie Mac <u>Corporate</u>.

The assignment should have been to Freddie Mac as Trustee of the *trust res* in which Alles' loan was purportedly to be securitized into on 9/13/06. Whether defendants participated in a conspiracy to defraud is an issue of fact for a jury.

## 11.    Fraud (Actual & Constructive) Civil Code §§1572-1575

Defendants inserted its canned *cut & paste* arguments used by banks in motions to dismiss, arguing plaintiff failed to plead *specific* facts required by Rule 9. In anticipation of a 12b6 MTD, plaintiff inserted the <u>statutory elements</u> of <u>actual</u> and <u>constructive fraud</u> verbatim in outline form. Plaintiff then inserted specific factual allegations under each outlined element. [FAC ¶¶263-292]. Plaintiff alleged Wells' agents advised her to stop making payments to trigger eligibility for a modification while well-aware that Wells/Freddie Mac did/does not fully participate in HAMP and that has Wells engages in a regular practice of denying nearly all loan modifications. A careful review of plaintiff's fraud (actual and constructive) includes specific factual averments.

**Actual fraud is always a question of fact.  Civil Code §1574**

Defendants argue constructive fraud is not possible because there is no "fiduciary duty" in a purported "arms length transaction between a borrower and a lender, such as Wells Fargo. However, Wells Fargo admitted that it pre-sold the loan to Freddie Mac closing escrow 9/13/06 which was only a few weeks after Alles' 8/2/06 purchase escrow closed.  Wells Answer, p. 3:10 Defendants' pre-arranged "deal" was for Wells to be seller/servicer and Freddie Mac to securitize Alles' loan into a Freddie Mac Trust, in which PC holders would actually fund the Alles loan. Evaluating this transaction for what it really was---not its labels---Wells acted as a wholesale real estate loan broker pursuant to Business & Professions Code §10131:

> A real estate broker within the meaning of this part is a <u>person who, for a compensation</u> or in expectation of a compensation, regardless of the form or time of payment, does or <u>negotiates to do one or more of the following acts for another or others</u>:
> ...
> **(d)** Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity.

Accordingly, Wells acted as a wholesale loan broker and dual agent for Alles and Freddie Mac Corporate & Freddie Mac as Trustee for the Remic trust PC holders (the "real" lenders)

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

Freddie Mac Corporate & Freddie Mac as Trustee are real estate loan brokers under CA law:

> B&P 10131.3. Inclusion of person engaged in real estate syndicate security transactions; A real estate broker within the meaning of this part is also a person who, for another or others, for compensation or in expectation of compensation, issues or sells, solicits prospective sellers or purchasers of, solicits or obtains listings of, or **negotiates the purchase, sale, or exchange of securities as specified in Section 25206 of the Corporations Code.**

As shown above, the true beneficiaries of the Alles' loan are the PC holders in the REMIC trust. Under California law, both Wells and Freddie Mac's true function was "a real estate loan broker" acting <u>exactly</u> as defined in B&P §10131 & B&P §10131.3, invoking a statutory fiduciary duty:

### B& P §2923.1.  Mortgage broker is a fiduciary

**(a)  A mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower**, and any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law. **This fiduciary duty includes a requirement that the mortgage broker place the economic interest of the borrower ahead of his or her own economic interest**. A mortgage broker who provides mortgage brokerage services to the borrower <u>owes this fiduciary duty to the borrower regardless of whether the mortgage broker is acting as an agent for any other party</u> in connection with the residential mortgage loan transaction.

 **(2)  Mortgage broker means a licensed person who provides mortgage brokerage services. For purposes of this section, a licensed person who makes a residential mortgage loan is a mortgage broker**, and subject to the requirements of this section applicable to mortgage brokers, only with respect to transactions in which the licensed person provides mortgage brokerage services.

 **(3)  Mortgage brokerage services means arranging or attempting to arrange, as exclusive agent for the borrower or as dual agent for the borrower and lender, for compensation or in expectation of compensation, paid directly or indirectly, a residential mortgage loan made by an unaffiliated third party.**

Because Wells & Freddie Mac acted as loan brokers (dual agents) for borrower Alles & lender [PC holders who owned a fractional beneficial interest of Alles' loan after they funded her loan], a fiduciary duty arose as soon as Alles opened an escrow and applied to Wells Fargo for a loan.

As to fraud claims for recording fabricated, forged & fraudulent pre-foreclosure instruments, [SOT, NOD, NOS, §2923.5 compliance affidavits] many ninth circuit courts have denied the 12(b)(6) motions to dismiss---finding fiduciary duties arises when a bank or servicer offers loan modification services as this goes "well beyond" the realm of an 'arms' length transaction."

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

In *Johnson v. HSBC Bank,* 11-cv-2091 JM-WVG (SD Cal-2012) the court held a lender who "offers a loan modification has gone beyond its conventional role" a general shield of liability doesn't protect the lender.  The court denied a MTD where plaintiff alleged invalid assignment:

> ….Further, **Plaintiff argues that a lender that offers a loan modification has gone beyond its conventional role**. The rule that a lender does not have a duty to a borrower is only a "general rule," and only applies to situations where a lender plays its conventional role.  e.g., *Taheny v. Wells Fargo Bank, N.A.*, 2010 WL 5394315 (E.D. Cal. 2010).  Accepting the allegations of the complaint as true, **BOA has gone beyond the typical lender's role.**  As in *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451 at *7 (N.D. Cal. 2011), **BOA established a loan modification plan with Plaintiff, made excessive interest charges and made "derogatory credit reports to credit bureaus." Compl. ¶ 109.  More generally, Plaintiff alleges that BOA did not have the legal authority to demand payments from Plaintiff because of the assignment's invalidity.  If BOA was not a lender legally authorized to collect payments from Plaintiff, the general rule shielding actual lenders from liability would not apply.**    More generally, the court finds that the allegations Plaintiff has put forth meet the federal pleading standard of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  While yet to be proven, Plaintiff presents plausible allegations of misconduct that, if true, would entitle him to relief.  *Johnson*

In *Vogan v. Wells Fargo,* WL5826016, *7 (ED Cal-2011) the court held the following:

> To show a violation under the fraudulent prong, a plaintiff must show that members of the public are likely to be deceived by the practice. *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614622 n. 8 (Ct. App. 2010).—A plaintiff's burden thus is to demonstrate that the representations or nondisclosures in question would likely be misleading to a reasonable consumer.‖ Id…. Plaintiffs pleaded that U.S. Bank failed to comply with TILA § 1641(g), as discussed above. Pleading that U.S. Bank violated TILA is sufficient to maintain a UCL claim against U.S. Bank under the unlawful aspect of the UCL… **Plaintiffs also pleaded that Wells Fargo recorded a fabricated assignment of deed of trust assigning interest in Plaintiffs' loan to U.S. Bank. Compl., at 14-16. As discussed above, Plaintiffs alleged that the recorded assignment was executed well after the closing date of the MBS to which it was allegedly sold, giving rise to a plausible inference that at least some part of the recorded assignment was fabricated.** Plaintiffs allege that such conduct, if proven, constitutes a violation of Cal. Penal Code § 532f(a)(4). Compl., at 24. That section prohibits any person from **filing a document related to a mortgage loan transaction with the county recorder's office that is known to be false, with the intent to defraud**. Cal. Penal Code § 532f(a)(4). Accordingly**, the Court DENIES Wells Fargo and U.S. Bank's motion to dismiss this claim**.  *Vogan*

1  In the court in *Suarez v. BONY* (LA) 12-560082 (2013) held recording a false assignment of
2  DOT sufficiently alleges "fraudulent conduct" and is "likely to deceive members of the public,"
3  to support a claim for "fraudulent business practice" under B&P §17200.  The court also found
4  that judicially noticed documents (the fraudulent assignment) supported plaintiff's claim :

> **As Plaintiff alleges Defendant caused a false Assignment of Deed of Trust to be
> recorded, Plaintiff sufficiently alleges a violation of this provision**. (¶30 of the
> FAC).  **Additionally, this allegation sufficiently establishes "fraudulent" conduct**,
> **for purposes of §17200, as the recording of the Assignment of the Deed of Trust
> is likely to deceive members of the public.**  Further, while Defendant asserts that
> Plaintiff failed to allege sufficient facts, within the Complaint, demonstrating that
> Defendant *knowingly* recorded a false document, this argument fails.
> Firstly,  *Penal Code §115* does not appear to require such knowledge and, second,
> <u>judicially noticeable documents clearly demonstrate that MERS lacked individual</u>
> <u>authority to record the subject assignment.  Thus, judicially noticeable documents</u>
> <u>support Plaintiff's claim.</u>  As a result, the instant Demurrer is overruled.  *Suarez*

13  *Suarez* provides the identical fact pattern to this case as pleaded, as shown above, and as follows.
14  Wells <u>admits</u> Freddie bought the loan 9/13/06 yet caused CWRC's *robosigner* to execute an SOT
15  representing to plaintiff, public & the court that Wells is <u>present</u> <u>beneficiary</u> <u>knowing it was false</u>.

16  10 │ 16.   Answering Paragraph 16, Defendant admits that Freddie Mac purchased
17  11 │ Plaintiff's note on September 13, 2006.  Except as expressly admitted herein,   ◀**Wells Answer**, 3:10

**SUBSTITUTION OF TRUSTEE**

T.S. NO.:1367335-10                                                  12025980

WHEREAS, CAROLE ALLES, AN UNMARRIED WOMAN AND NANCY DUFFY, AN UNMARRIED WOMAN
was the original Trustor, FIDELITY NATIONAL TITLE INSURANCE COMPANY was the original Trustee, and
WELLS FARGO BANK, N.A. was the original Beneficiary under that certain Deed of Trust dated July 28, 2006 and
recorded on August 02, 2006 as Instrument No. 2006-0566295, in book XX, page XX of Official Records of
RIVERSIDE County, California, and

WHEREAS, the undersigned is present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to
substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder, in the manner in
said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes, CAL-WESTERN RECONVEYANCE CORPORATION a
California Corporation whose address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON  CA  92022-9004 as
Trustee under said Deed of Trust.  Whenever the context hereof so requires, the masculine gender includes the feminine
and/or neuter, and the singular number includes the plural.

Dated:  7-27-12                            WELLS FARGO BANK, N.A.
                                           BY CAL-WESTERN RECONVEYANCE CORPORATION
                                           AS ATTORNEY-IN-FACT

                                           Monica L. Gonzalez, A.V.P.              ◀**Def. RJN, Exh.2, p.29**

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

CWRC's *robosigners* knowingly executed & recorded 3 more false instruments continuing a pretext that Wells was beneficiary when all three knew that representation was patently false:

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated July 28, 2006 executed by**  ◄ Def. RJN. Exh.3:31

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached SB1137 Declaration.

T.S. 1367335-10
Dated:      July 31, 2012          CAL-WESTERN RECONVEYANCE CORPORATION

Signature By _____

Monica Chavez          ◄ Def. RJN. Exh.3:31

☒ The Beneficiary tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with California Civil Code Section 2923.5 because:

  ☐ The real property is not "owner-occupied" residential real property as defined by the statute.

  ☐ The deed of trust was not recorded between January 1, 2003 and December 31, 2007.

  ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

  ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

  ☐ The borrower has filed for bankruptcy under Chapter 7, 11, 12 or 13 of Title 11 of the United States Code, and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case or granting relief from stay.

Dated: 7/6/12          _____

Wells Fargo Bank, N.A.

Deitrice Hemphill
VP of Loan Documentation          ◄ Def. RJN. Exh.3:33

**NOTICE OF TRUSTEE'S SALE**   120256980

TRA:18244
REF: ALLES, CAROLE      UNVER
Property Address: 43060 ILLINOIS AVENUE, PALM DESERT CA 92211          ◄ Def. RJN. Exh.4:35

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.          ◄ Def. RJN. Exh.4:36

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

Alles filed her case on 11/29/13 and immediately served it on CWRC & Wells.  In a kneejerk

reaction to being "outed" by plaintiff's counsel CWRC & Wells tried to cure their dilemma by

using a robsosigner to fabricate, execute and record yet another fraudulent instrument on 12/7/12

> **ASSIGNMENT OF DEED OF TRUST** 120256980
>
> FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
> FEDERAL HOME LOAN MORTGAGE CORPORATION
> C/O      3476 STATEVIEW BLVD
>           FORT MILL SC 29715
>
> all beneficial interest under that certain deed of trust dated July 28, 2006, executed by CAROLE ALLES, AN
> UNMARRIED WOMAN AND NANCY DUFFY, AN UNMARRIED WOMAN, to FIDELITY
> NATIONAL TITLE INSURANCE COMPANY, trustee, and recorded as Instrument No. 2006-0566295 on
> August 02, 2006 in book N/A page N/A, of Official Records in the County Recorder's office of RIVERSIDE
> County, CALIFORNIA describing land therein as
> COMPLETELY DESCRIBED IN SAID DEED OF TRUST
> and all rights accrued or to accrue under said Deed of Trust.
>
> Dated:   12-5-12
>                          WELLS FARGO BANK, N.A. By Cal-Western Reconveyance
>                          Corporation as its attorney in fact
>
>                          Monica L. Gonzalez, A.V.P.                    ◄ Defendants' RJN Exh. 5, p.38

▲

## WHY THE ASSIGNMENT TO FREDDIE MAC <u>CORPORATE</u> WAS A FRAUD

1.) Wells' answer <u>admitted</u> Freddie already owned it 9/13/06; there was <u>nothing</u> to assign 12/7/12

2.) Even if valid why would Wells assign it to Freddie Mac <u>Corporate</u> rather than FM as <u>trustee</u>?

3.) Why would original TD (<u>after recording</u>) return to assignor instead of delivered to assignee?

> NOTE: address on top left to return original is Wells foreclosure mill in Fort Mill, SC
> There can be no valid transfer of a security without DELIVERY to assignee Com.C§3203
> **Commercial Code §3203. Transfer**
> **(a)**  An instrument is transferred when it is <u>delivered</u> by a person other than its issuer for
> <u>the purpose of giving to the person receiving delivery the right to enforce the instrument</u>.

4.) CWRC (a corporation) cannot be an "attorney in fact" as it is not a natural person. PC §4120
     PC §4120:  *A <u>natural</u> person having the capacity to contract may execute a power of attorney*.
     Power of attorney to transfer interest in real property must be recorded where property sits

5.) A *robosigner* lacked authority to transfer a real property asset absent a *corporate resolution*

Finally, the court in *Ragland v. US Bank*, _CA.4[th]._,[G045580. 4th.Dist., Div. 3- Sept. 11, 2012]

reversed the granting of summary judgment---finding fraud allegations were <u>triable</u> issues of fact.

All of the above allegations were included in the FAC.  There can be no question that plaintiff, in

a 60 page FAC, provided sufficient allegations of fraud, under the above-cited authorities in the

9th. circuit to survive a MTD.  **Actual fraud is always a question of fact.  Civil Code §1574**

42

## 12.  5th. & 14th. Amendment Due Process Violations

1
2      Defendants argue plaintiff improperly cited two Michigan cases.  This fails for two reasons.

3  First, defendants cited to unpublished cases; i.e. the *Jenkins v. Chase* case decided 5/17/13 before

4  the window for appeal had even expired (on 6/16/13).   Under the goose/gander doctrine plaintiff

5  may also cite new decisions.  Secondly, a party may cite a case directly related to a pending issue.

6  *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) [court may notice a case <u>within and</u>

7  <u>without the federal judicial system</u>, if the case relates to issues in the pending case].   Plaintiff's

8  cite [see Def. RJN, Exh.6] directly relates to plaintiff's claim that Freddie Mac is a <u>federal actor</u>.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

        Plaintiff-Appellee,              **OPINION AND ORDER**

                                         HON. ROSEMARIE E. AQUILINA

    v                                    Docket No: 12-000885-AV

MICHAEL R. KELLEY
and KATHRYN M. KELLEY,

        Defendants-Appellants.

            At a session of said Court held in the City of
        Lansing, County of Ingham, State of Michigan,
              this 12th day of February, 2013

          PRESENT:  The Honorable Rosemarie E. Aquilina
                 30th Judicial Circuit Court Judge

    This matter comes before the Court on Michael and Kathryn Kelly's ("Defendants")

appeal from a District Court decision granting possession of property to the Federal Home Loan

Mortgage Corporation ("Plaintiff").  This Honorable Court having reviewed all briefs, motions,

supporting documents, and being fully appraised of the issues, states the following:

◄Def. RJN, Exh. 8, p. 53

                    CONCLUSION OF LAW

    This Court reverses the District Court's decision on two grounds.  First, this Court finds

Plaintiff, as it currently conducts business, a government entity requiring 5th Amendment Due

Process notice and hearing for actions depriving individuals of life, liberty, or property.  In

addition, the Court finds that pursuant to MCL 600.3204(3), Michigan is a notice state requiring

assignment of the mortgage from ABN AMRO to CitiMortgage in the occurrence of a merger

between the companies.

                                          Def. RJN, Exh. 8, p. 60

1   Both Michigan courts held Freddie Mac & Fannie Mae (the enterprises) as they currently

2   conduct business, are government entities requiring 5th. Amendment Due Process <u>notice and</u>

3   <u>hearing</u> for actions depriving individuals of life, liberty or <u>property</u>.  Plaintiff is entitled to due

4   process under the 5th Amendment to the US Constitution and the right to confront witnesses

5   under its 6th. Amendment.  Both amendments are applied to states through the 14th. Amendment.

6   Freddie Mac is not authorized to proceed in this foreclosure through an <u>advertised</u> trustee sale.

7   **13.  Violations of ECOA [Age & Disability] §15USC 1691-Unruh-Civ §51; 42 USC §1983**

8   Defendants' arguments against this claim are preposterous.  First, they argue that the FAC

9   "*fails to identify which provision of the ECOA Defendants allegedly violated.*"  This is not true.

10   The CAPTION to the FAC (on page 1) expressly identifies the violation; i.e **Age & Disability**:

11   **(13)  Violations of ECOA discrimination [Age & Disability]**
      **§15USC 1691-Unruh-Civil §51 et seq.; 42 USC §1983** ◄FAC caption

12

13   Defendants misrepresented that plaintiff failed to allege, reciting the elements as follows:

14   "*To state a claim under ECOA, a plaintiff must allege that (1) she is a member of a protected*

15   *class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was*

16   *denied credit despite being qualified.*" [MTD].  <u>Plaintiff alleged all four of these issues of fact</u>:

17   *(1) she is a member of a protected class;*

18   FAC ¶3: "**At 71 she is an unemployed homeowner, disabled with an inoperable, incurable
     lung disease**"; FAC ¶308: "**ALLES believes WELLS is discriminating against her because of**

19   **her age (71) and the fact that she can no longer work because of her disability, WELLS also**

20   **refused to consider the income Alles receives monthly from two tenants ($1275) in making**
     **its modification decision.**"; FAC ¶36: "**ALLES thought she would qualify for a hardship**

21   **modification because she was over 70, was unemployed, and was disabled with an**

22   **incurable, inoperable lung disease causing coughing.**"

23   *(2) she applied for credit with defendants;*
     FAC ¶ 42: "**ALLES' attorney filed an application for a HAMP modification through the**

24   **Inland Empire   HUD-approved consultant.**

25   *(3) she qualified for credit <u>and</u> (4) she was denied credit despite being qualified.*"
     FAC §42 "**WELLS denied ALLES' application on 11/8/12 despite an NPV report, populated**

26   **by her attorney at HAMP's website, showing she qualified for a modification.**"

27   *(4) ) she was denied credit despite being qualified.*"
     FAC §42 "**WELLS denied ALLES' application on 11/8/12 despite an NPV report, populated**

28   **by her attorney at HAMP's website, showing she qualified for a modification.**"

1    By arguing that all a plaintiff need do to plead a claim for discrimination under the ECOA is

2    to allege the above-cited <u>four</u> elements defendants concede that plaintiff's claim is properly pled.

3    Defendants next argue that banks are not required to approve a HAMP modification "as a

4    matter of law" citing the older *Harvey* and *Nungaray* cases, but failing to cite a more recent case

5    expressly holding that banks can be required to modify under HAMP, and a promissory estoppel

6    claim lies. *West v. JP Morgan Chase Bank, N.A.,* 214 CA. 4th 780 (2013): see also *Wigod v.*

7    *Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012).  The duties are imposed through

8    HAMP Supplemental Directive 09-01 (Apr. 6, 2009).  The court found a promissory estoppel

9    claim and a claim for an unfair business practices under B&P §17200, were also viable.

10    Whether Alles was qualified for credit (loan modification), and whether she was denied credit

11    despite being qualified, are issues of fact which cannot be resolved on a Rule 12(b)(6) motion.

12
13  **14.   Violations of California Homeowners Bill of Rights** [HBOR]

14    Defendants argue that, although plaintiff concedes HBOR is not retroactive, she improperly

15    argues that defense counsel violated Civil §2924.17 [HBOR] after it became law on Jan 1, 2013.

16    Plaintiff's allegations were proper.  Counsel for Wells & Freddie Mac and CWRC's counsel

17    violated Civil §2924.17 by asking the court to judicially notice five fraudulent instruments.

18    One of the new HBOR statutes, Civil Code §2924.17 recites as alleged in FAC ¶328:

19     (a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018,
      pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of

20     trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in
      connection with a foreclosure subject to the requirements of Section 2924, **or a**

21     **declaration** or affidavit **filed in any court relative to a foreclosure proceeding shall**
      **be accurate and complete and supported by competent and reliable evidence.**

22     (b) **Before recording <u>or filing</u> any of the documents described in subdivision (a),** a
      mortgage **servicer shall ensure that it has reviewed competent and reliable evidence**

23     **to substantiate the borrower's default and the right to foreclose**, including the
      borrower's loan status and loan information.

24
25    Affidavits are written documents attached to an oath or some affirmation (i.e., notary public).

26    that the statements in the affidavit are true.   <u>Declarations are merely written documents that the</u>

27    <u>author believes to be true, but the statements are given without the author being sworn in by a</u>

28    <u>court officer</u> such as in a deposition or when giving live testimony in a court proceeding.

Declarations under penalty of perjury (sometimes referred to as sworn statements) are very similar to affidavits.    Courts consider both to be legally equivalent, although most court systems and businesses still prefer affidavits over declarations.    Affidavits are signed before a notary public or commissioner of oaths and require notarization.  Declarations must be signed only by the author, although sometimes before a justice of the peace or, at least, legal counsel.  U.S. Code §1746 permits an individual to submit as true a declaration under penalty of perjury.

Defense counsel argues Requests for Judicial Notice were submitted but not signed under oath. **Counsel cannot have it both ways.**  If not signed under oath they are <u>unauthenticated hearsay</u>.

Rule 11 applies to <u>all</u> pleadings "*certified*" by counsel and filed whether or not it was under oath:

> **(b) Representations to the Court**. By <u>presenting to the court a pleading</u>, **written motion, or other paper whether** by signing, filing, submitting, or later advocating **it an attorney or unrepresented party certifies that to the best of the persons knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:**
> **…**
> **(3) the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4) the denials of factual contentions are warranted on the evidence** or, if specifically so identified, are reasonably based on belief or a lack of information.

Counsel's RJN violated not only §2924.17 but also Rule 11.  Under *In re Vargas* LA0817036Sb (CD US Bankr. Ct-2008) the court must refuse to take Judicial Notice of fraudulent instruments:

A certified copy of a public record must be made "by the custodian or other person authorized to make the certification . . ." FED. R. EVID. 902(4).  In addition, the certification of a domestic document must comply with paragraph (1) (for documents under seal) or (2) (for documents not under seal) of Rule 902.  If the document is not under seal (as appears in this case), the signature must be "in the official capacity of an officer or employee" of a governmental entity qualifying under paragraph (1).  Finally, the certification must include a certification under seal, made by "a public officer having a seal and having official duties in the district or political subdivision of the [certifying] officer or employee" that the signer "has the official capacity and that the signature is genuine." All of this is missing from the purported certification.  Thus, the court must assume that Ms. Urquijo has no authority whatever to certify the deed of trust.

Here, the authenticity of the deed of trust is disputed by the debtor.  Presumably in consequence thereof, MERS has declined to move its admission into evidence.[13]

_____

Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

[13] The declarant's total lack of competence to testify on this motion raises a serious question as to the good faith of counsel for MERS under Rule 9011.  Counsel should have known that Turner was incompetent to testify as to anything relevant to this motion.  Thus, counsel should not have filed with the court the declaration in which he stated falsely, under penalty of perjury: "I have personal knowledge of the matters set forth in this declaration and, if called upon to testify [as he was], I could and would competently testify thereto."

The court concludes that this motion for relief from stay must be denied on two separate grounds.  First, the motion improperly attempts to obtain relief for unidentified parties, in violation of the rule requiring the disclosure of parties appearing before the court.  Second, the only evidence supporting the motion is provided by a witness who is incompetent to provide any relevant evidence.

Dated: October 21, 2008

Hon. Samuel L. Bufford
United States Bankruptcy Judge

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

1    Counsel knew full well the instruments included in the RJN were not self-authenticating

2    because they were not certified copies of the court records [FRC 902(4)]; they were not properly

3    authenticated because counsel is not custodian of records of the entities who purportedly created

4    and/or executed them; there was no affidavit testifying the documents were kept in the ordinary

5    course of business; counsel had no personal knowledge of the contents of the recorded documents.

6    As Judge Bufford noted such filings with the court should raise serious questions as to the

7    good faith of counsel under FRCP 11.   This court should seriously consider counsel's motives.

8    As to the allegations that counsel continued to conceal Freddie Mac and FHHA's involvement the

9    court should consider Judge Bufford's admonitions to counsel in *In re Vargas*, *supra* as follows:

10       The identification of the movant
11   serves several important functions. First,
     it links the motion to the Schedule A list of real
12   property owned by the debtor.  Second, this
     identification links the motion to the Schedule
13   D list of creditors holding secured claims.
     Third, this identification permits the judge to
14   determine whether the judge must recuse
     based on the Code of Conduct for United
15   States Judges (requiring recusal in a variety of
     circumstances based on the judge's
16   relationship, if any, to the moving party).[5]
         The exclusion of these unidentified
17   parties is particularly important in this
     proceeding. It is highly unlikely that FHM has
18   kept the promissory note: most likely, it sold
     the note into the market for mortgage
19   securitization.[6]  In consequence, it is quite
     unlikely that MERS is an authorized agent of
20   the holder of the note here at issue.
     By adding these unidentified movants, MERS
     is trying to obtain relief from the automatic stay
     for the current note holders without disclosing
     to the court their existence, identities or the
     source of MERS's authority to act on their
     behalf. This is improper.        ◄*In re Vargas*, supra, p.3 [concealing related parties is improper]

21       Judge Bufford admonished counsel about his duty to identify all parties for three reasons:

22   "this identification permits the judge to determine whether the judge must recuse based on the

23   Code of Conduct for United States Judges" and to identify the proper beneficiary and the source

24   of the foreclosing party's authority to act on their behalf. *Id*   "**This is improper**."   *Id*

25   Under ninth circuit authority counsel clearly violated §2924.17 and FRCP 11's duty of honesty.

26       Injunctive relief under HBOR is prospective and can be sought to compel defendants, and

27   their counsel to comply with the mandates of Civil Code §2924.17 and FRCP 11.  The claims

28   should not be dismissed.  Whether HBOR was violated is an issue of fact for a jury.

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

1

# V. CONCLUSION

2

**Defendants Contentions are Contradicted by Their Own Documents**

3

Defendants can't have it both ways! They argue plaintiff has no standing to challenge a failed

4

securitization.    Yet, the very documents they rely on contradict their preferred version of events.

5

According to them, Wells assigned its beneficial interest in the Deed of Trust to Freddie Mac

6

via an assignment recorded on 12/7/2012 [Def. RJN, Exhibit 5, p.38].  That is the instrument

7

recorded to foreclose.   If the court takes Judicial Notice of the assignment, as they requested,

8

then Wells had no beneficial interest in the DOT when it executed and recorded the Substitution

9

of Trustee, the Notice of Default, and the Notice of Sale. *Tamburri*, 2011 WL 6294472 at *9.l4

10

("[A] party may not foreclose without legal power to do so.") Defendants can't have it both ways!

11

Plaintiff alleges that the wrong party (Wells) executed and recorded the Substitution of

12

Trustee,  Notice of Default, and Notice of Sale all prior to recording that 12/7/12 assignment.

13

The fact that Wells had no beneficial interest in the loan when the SOT, NOD, and NOS were

14

recorded is a proven fact--- by Wells' admission of same in answering plaintiff's complaint:

15



16

17  10        16.    Answering Paragraph 16, Defendant admits that Freddie Mac purchased

18  11   Plaintiff's note on September 13, 2006.  Except as expressly admitted herein,   ◄Wells Answer, 3:10

19

20

At the 12(b)(6) stage, given the factual uncertainties underlying defendants' arguments,

21

Plaintiffs claims are sufficient to withstand a motion to dismiss.   The motion should be denied in

22

its entirety and defendants should be ordered to answer in 14 days.  It the court intends to dismiss

23

the FAC then plaintiff requests leave to amend.

24

25

Dated: 6/17/2013

Nancy Duffy McCarron

26

27

28

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

**DECLARATION OF PLAINTIFF'S COUNSEL**

Request For Permission To Exceed 25 Pages [LR 11-6]

I,  NANCY D. MCCARRON, declare the following under penalty of perjury and US law:

1.  I make these statements based on personal knowledge and could testify to them.

2.  The court granted Wells Fargo's motion to dismiss the original complaint filed 11/29/12, granting plaintiff leave to amend the complaint,  but with a Rule 11 "reasonableness" warning. Plaintiff took the warning seriously and extensively researched the law in the ninth circuit to make sure there was a reasonable basis for each cause of action in the amended complaint, and that each claim is/has been supported by ninth circuit authorities on cases with similar facts. The causes of action counsel believed were not supported by this judicial officer were dropped.

[ADA, promissory estoppel, Rosenthal, FDCPA, negligent or wrongful foreclosure].
 The court only dismissed the covenant of fair dealing because no contract was alleged. Breach of Contract is now alleged. UCL was included because plaintiff found significant support in the ninth circuit for UCL claims for violations of other codes, HBOR and recording false instruments to deceive plaintiff, members of the public, and courts, about the identity of the true beneficiary.

3.   Defense counsel filed a Rule 12(b)(6) motion using the maximum 25 pages of briefing, and on each claim misrepresented that plaintiff "failed to allege the elements" of the claim.  Thus, counsel was forced to "cut and paste" paragraphs proving she had alleged elements of claims. Plaintiff could have just referred to paragraphs to use less pages, but this would have burdened the court with having to flip back and forth between arguments and the FAC to decided  on it. Although the brief exceeds 25 pages counsel believes in good faith her efforts helped the court.

4.  Secondly, the issues involved in the 14 claims are complex, and the law is changing daily. Counsel made her best effort to thoroughly brief issues, especially where district courts disagree. Because this is a FAC the court could dismiss a claim without leave to amend. Thus, counsel had to make sure the court was fully briefed to avoid losing a valid claim because the court believes misrepresentations made in the motion.   Plaintiff asks the court's understanding and permission (or forgiveness) for having exceeded 25 pages.  Executed in Santa Barbara on the date below.

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)

Dated: 6/17/2013

*Nancy Duffy McCarron*
Nancy Duffy McCarron

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA**

At the time of service I was over 18 years of age and not a party to this action.
I am attorney for plaintiff.  My address is: 950 Roble Lane, Santa Barbara, CA 93103.

On the date entered below I served true copies of the following document(s)

### OPPOSITION TO MOTION TO DISMISS FAC UNDER FRCP 12(B)(6)

| | |
|---|---|
| Adam Hamburg,Atty for Wells & Freddie Mac | Helen Cayton, Atty for CWRC |
| Prenovost, Normandin, Bergh & Dawe | Wright, Finlay & Zak LLP2122 No. |
| Broadway, Suite 200 | 4664 MacArthur Court, Suite 200 |
| Santa Ana, CA 92706-2614 | Newport Beach, CA 92660 |
| 714-547-2444   fax 714-835-2889 | 949-477-5050 ext.1024 fax 949-608-9142 |
| "ahamburg@pnbd.com" | hcayton@wrightlegal.net |

Courtesy copy sent by email to: Director@fhfa.gov; DeputyDirector-enterprises@fhfa.gov; GeneralCounsel@fhfa.gov; Ombudsmen@fhfa.gov

**BY CM/ECF NOTICE OF ELECTRONIC FILING**:  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered with CM/ECF users will be served by mail or by any other means permitted by the court rules, and/or agreed by the parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a member of the bar of the Court at whose direction the service was made.  Executed on the date below at Santa Barbara, CA.

*Nancy Duffy McCarron*
Nancy Duffy McCarron

Dated:  6-17-2013

OPPOSITION to WELLS & FHLMC's Motion to Dismiss under FRCP 12(b)(6)